**UNITED STATES of America, Appellee,**

v.

**Francis P. DESMOND, Appellant.**

**No. 81–1590.**

United States Court of Appeals, Third Circuit.

Argued Dec. 1, 1981.

Decided Jan. 19, 1982.

Rehearing Denied March 3, 1982.

John Rogers Carroll (argued), Thomas Colas Carroll, Carroll & Carroll, Philadelphia, Pa., for appellant.

Howard B. Klein, Asst. U. S. Atty. (argued), Peter F. Vaira, Jr., U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before ALDISERT, ROSENN and WEIS, Circuit Judges.

OPINION OF THE COURT

WEIS, Circuit Judge.

Submission of special interrogatories to a jury in a criminal trial is not favored because they may unduly restrict that body's

historical power to acquit. Their use in the case at hand, however, did not rise to the level of plain error. Accordingly, we reject defendant's challenge to his conviction based on the jury's answers to interrogatories to which no objection was made at trial.

Defendant, a practicing attorney in Pennsylvania, was charged with violating the Internal Revenue Code, 26 U.S.C. § 7206(1), by failing to report approximately $48,000 in income during the taxable years 1973, 1974 and 1975. He presented no testimony at trial, but through cross-examination and argument, contended that he had not acted willfully or with the belief that the returns were incorrect as to any material matter. The fact of underreporting itself was not contested. Rather, defendant advanced as excuses a combination of careless bookkeeping and his erroneous opinions on the taxable status of the funds. On cross-examination, a number of government witnesses testified to defendant's good character.

At the conclusion of the evidence and before final summations, the trial judge told counsel that he proposed to submit the case to the jury on three written interrogatories that incorporated the elements of the offense charged. The questions were framed so that an answer of "yes" was equivalent to a guilty verdict, and "no" indicated a not guilty finding. The judge told counsel that "when we take our break, I will give you the verdict slips, and you may feel free to edit them if you want to." Defense counsel did not object then or afterward, nor did he suggest any changes in language.

The interrogatories were similar for each of the three counts and read as follows:

"1. Has the government proved beyond a reasonable doubt each of the following:

(a) that the defendant willfully made and subscribed to an incorrect 1973 federal income tax return;

(b) that defendant's 1973 federal income tax return contained a written declaration that it was made under the penalty of perjury; and

(c) that defendant did not believe his 1973 federal income tax return to be true and correct as to every material matter when he signed it and said return was not true and correct as to every material matter.

ANSWER: YES_____ = Guilty
NO _____ = Not Guilty

\* \* \* \* \* \*

The undersigned, members of the jury, hereby certify that the foregoing answers to interrogatories are the unanimous action of the jury:

_____(SEAL)"

When the judge reviewed the interrogatories during the course of the charge to the jury, he pointed out that they set forth the three elements of the alleged crimes and explained:

"If you find that the Government has established those elements beyond a reasonable doubt, then you would answer, yes, which would equal guilty.

"If you find the Government, as the defendant contends, simply has not met the burden of proof, you would find, no, which equals not guilty.

\* \* \* \* \* \*

"Each juror must sign on the last page, page 3. Your verdict must be unanimous on each question. There is no majority vote in the federal jury room."

In his instructions, the trial judge also described the nature of character evidence, saying in part,

"Evidence of the defendant's reputation inconsistent with those traits of character ordinarily involved in the commission of the crime charged may give rise to a reasonable doubt as to his guilt. Since you the jury may think it improbable that a person of good character and in respect to those traits would commit the crime charged in this instance, it is strictly up to you.

"Character evidence is a piece of evidence you may use in assessing the overall guilt or innocence of the defendant on the three counts in this case."

Later in the charge, the judge discussed the element of willfulness at some length,

emphasizing that the prosecution was required to prove that defendant acted deliberately and with the intent to violate the law, rather than carelessly or inadvertently. After reviewing the government's contentions, the court explained the defense theories, and said:

"Finally, the defendant strongly urged that all of the Government's witnesses practically—I shouldn't say all, a good number of the Government's witnesses testified that his reputation for truth and veracity was good, and that if you find that a person with that kind of reputation is unlikely to commit this kind of crime, you could acquit him on that basis. Again, it's strictly up to you. That's why we have the jury system. That's why our country is so much better than other countries. Nobody can be convicted of a crime unless you are convinced beyond a reasonable doubt that the Government has met its burden of proof of establishing the facts of underreporting in this case for each year.

"Consider it separately and whether, if you do find that underreporting exists, was it done willfully with an intent to evade income tax responsibilities."

Neither counsel requested any corrections or additions to the charge.

After the jurors retired and had deliberated for some time, they asked the judge to "explain willfulness again." He did so, largely repeating the extended discussion he had previously given, including a reemphasis of the government's burden to establish intent. Again, neither counsel took exception.

On the following morning, the jury made its findings to the court on each question. In response to the clerk's query as to the answers to each of the interrogatories, the jury foreperson responded, "The answer is, yes, guilty."

Defendant's post-trial motions asserted errors in certain evidentiary rulings, but did not question the use of the special interrog-

atories. Supplemental motions were filed when trial counsel was replaced with another lawyer, raising the incompetence of trial counsel as "newly discovered evidence." Once again, no error in utilization of the interrogatories was alleged, nor was there any criticism of trial counsel with respect to that phase of the case. After a hearing on the competency issue, the district court dismissed the post-trial motions, finding no error in the evidentiary rulings and concluding that trial counsel had adequately represented defendant.[1] Shortly before sentencing, defendant again changed lawyers, at that point retaining counsel who took this appeal. After a denial of post-trial motions, defendant was sentenced to a period of incarceration, followed by probation.

Defendant has raised two issues in this court. He contends first that defense counsel was unduly restricted in his cross-examination of a key witness, and second, that the use and form of the interrogatories constituted plain error which requires a new trial. To the latter issue defendant attaches the most importance, and hence we will address it first.

■ As a general proposition, special verdicts are generally disfavored in criminal cases, but there is no per se rule against them. We so held in cases within the past two years. *United States v. Palmeri*, 630 F.2d 192 (3d Cir. 1980), *cert. denied*, 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981); *United States v. Frezzo Brothers, Inc.*, 602 F.2d 1123 (3d Cir. 1979), *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980). Some of the antipathy toward special verdicts in criminal trials has its roots in the doctrine of "jury nullification," the power of a jury "to bring in a verdict in the teeth of both law and facts," a "technical right, if it can be called so, to decide against the law and the facts...." *Horning v. District of Columbia*, 254 U.S. 135, 41 S.Ct. 53, 65 L.Ed. 185 (1920).

---

1. The trial judge considered the objections to competency of counsel as "newly discovered evidence" under Fed.R.Crim.P. 33. Although

there is some doubt in our minds that the competency issue qualifies as "newly discovered" matter, we need not address the issue here.

Jury nullification has a unique place in the law and has been the subject of spirited debate for hundreds of years in both English and American law. *See, e.g.* Howe, *Juries as Judges of Criminal Law*, 52 Harv. L.Rev. 582 (1939). In the famous case of *Sparf and Hansen v. United States*, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895), the justices conducted an exhaustive review of the authorities and the majority concluded that, although the trial judge may not direct a verdict of guilty, it is "the duty of the court to expound the law and that of the jury to apply the law as thus declared to the facts as ascertained by them." *Id.* at 106, 15 S.Ct. at 294.

Even though *Sparf* resolved the controversy as to the duty of jurors in federal criminal trials,[2] the power to acquit in derogation of that obligation remained—because there could be no punishment for such conduct. *See Bushell's Case*, Vaughan 135 (C.P.), 6 How.St.Tr. 999 (1670). Thus, Justice Holmes' comment in *Horning* that the jury could decide a case in the "teeth of both law and facts," made 25 years after the *Sparf* opinion, was simply a realistic appraisal of this still viable power. As the court in *United States v. Moylan*, 417 F.2d 1002, 1006 (4th Cir. 1969), *cert. denied*, 397 U.S. 910, 90 S.Ct. 908, 25 L.Ed.2d 91 (1970), said:

"We recognize ... the undisputed power of the jury to acquit, even if its verdict is contrary to the law as given by the judge and contrary to the evidence. This is a power that must exist as long as we adhere to the general verdict in criminal cases, for the courts cannot search the minds of the jurors to find the basis upon which they judge. If the jury feels that the law under which the defendant is accused is unjust, or that exigent circumstances justifies the actions of the accused, or for any reason which appeals to

their logic or passion, the jury has the power to acquit, and the courts must abide by that decision."

It is also true that the courts have adopted a rather ambiguous attitude toward jury nullification, or "jury lawlessness" as Dean Pound termed it. *See* Pound, *Law in Books and Law in Action*, 44 Am.L.Rev. 12, 18 (1910). Respect for the concept and its benefits is reflected in opinions such as *Duncan v. Louisiana*, 391 U.S. 145, 156, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), where it is observed that "[i]f the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it." In *United States ex rel McCann v. Adams*, 126 F.2d 774, 776 (2d Cir.), *rev'd on other grounds*, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942), Judge Learned Hand spoke of the jury's verdict as introducing "a slack into the enforcement of law, tempering its rigor by the mollifying influence of current ethical conventions."

Yet, when defendants have asked that jurors be instructed on their power of nullification, the requests have been denied. *United States v. Dougherty*, 473 F.2d 1113 (D.C.Cir.1972); *United States v. Boardman*, 419 F.2d 110 (1st Cir. 1969); *United States v. Moylan, supra.* Thus, although acknowledging the existence of the jury's prerogative and its beneficial role in acting as a "safety valve," the courts do not encourage exercise of the right. Fear of excess or intolerable caprice is cited as the reason. *United States v. Dougherty*, 473 F.2d at 1134–35.[3]

This long-standing recognition of the jury's power of lenity explains why the use of special interrogatories, which might "catechize a jury as to its reasons," has been met with a lack of judicial enthusiasm. *See*

---

2. A number of the states had followed the practice of having jurors decide both law and fact. *See Wyley v. Warden, Maryland Penitentiary*, 372 F.2d 742, 746 n.7 (4th Cir. 1967). The number of states following that approach, however, has diminished. At present, only Maryland and Indiana still follow that practice. *See Stevenson v. State*, 289 Md. 167, 423 A.2d 558

(1980); *Cobb v. State*, 27 Ind. 133, 412 N.E.2d 728 (1980).

3. For comprehensive discussions of jury nullification and compilations of authorities, *see United States v. Moylan, supra*, and *United States v. Dougherty, supra*.

*United States v. Spock*, 416 F.2d 165 (1st Cir. 1969). *See also* Morgan, *A Brief History of Special Verdicts and Special Interrogatories*, 32 Yale L.J. 575, 592 (1923). Underlying this aversion is the feeling that denial of a general verdict might deprive the defendant of the right to a jury's finding based more on external circumstances than the strict letter of the law. *United States v. Wilson*, 629 F.2d 439 (6th Cir. 1980); *United States v. Bosch*, 505 F.2d 78 (5th Cir. 1974).

Nevertheless, there are circumstances where the use of special findings may be necessary; for example, in treason cases where the Constitution requires a finding of an overt act, *Kawakita v. United States*, 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249 (1952), or where a determination of certain facts will be crucial to the sentence, such as in certain conspiracy cases. In the latter situation, the appropriate information may be obtained by submitting special interrogatories to the jury after a guilty verdict has been returned. *See, e.g., United States v. Uzzolino*, 651 F.2d 207 (3d Cir. 1981). *See also*, 8A Moore's Federal Practice and Procedure § 31.02[3].

There are other situations in which it is conceivable that special findings may be beneficial to a defendant. They can decrease the likelihood of jury confusion and aid the defendant in a complex case. If a number of individuals are being tried together and the involvement of one or more is tangential at best, requiring the jury to answer specific questions may compel individual consideration of the charges against each defendant. This tends to eliminate or reduce the chances of a finding of guilt based upon association with or evidence against other culpable parties. *United States v. Palmeri*, 630 F.2d at 202–03. Accordingly, although we have conspicuously failed to endorse the use of special interrogatories in criminal cases, we have not thought it advisable to issue a per se prohibition.

Additionally, in *Palmeri* we held that it is necessary to make a timely objection to the use of interrogatories. *Id.* at 202 & n.8.

*Cf. United States v. Bosch, supra.* Consistency requires a holding also that the failure to request specific changes in the language of the interrogatories amounts to a waiver, just as does the decision not to ask for additions or corrections to the jury charge. *See* Fed.R.Crim.P. 30.

Although he raises the issue for the first time in this court, defendant seeks to avoid the strictures of *Palmeri* by characterizing the use and wording of the interrogatories as plain error. As we noted earlier, the point was not raised in the post-trial motions nor was it alleged to be evidence of incompetence of trial counsel. The subject was not examined during the post-trial hearing at all. If the error was plain, as present counsel contends, it obviously was not so glaring in the post-trial setting as to have caught the attention of newly-retained counsel or the trial judge.

Defendant now contends the form of the interrogatories prevented the jurors from assessing the effect of character evidence that might have led to acquittal, and the requirement of unanimity was misleading, particularly as to a negative vote by a juror on any one element of the offense. Moreover, it is argued that this relatively uncomplicated case did not present unusual circumstances which would justify the use of interrogatories.

The trial judge did offer counsel the opportunity to suggest changes to the form of the questions, but apparently the defense lawyer saw no need for revisions. The objections raised now could easily have been resolved by the trial judge had he been given the opportunity. A semantical error at this stage, therefore, must be gross indeed to warrant the grant of a new trial.

The interrogatories must not be read in isolation, but together with the entire jury charge. As we noted earlier, the instructions did analyze character evidence. Reasonable jurors would be able to make the connection between character and willfulness without difficulty. Although the interrogatories did not set out evidence of character as a separate consideration, the instructions sufficiently outlined its general

characteristics. If the jury had been persuaded that defendant was not the type of person who would have had the intent to commit the crime charged, they would have voted "No" on the question of willfulness. We are not persuaded that the jury was misled on this point. *See United States v. Gallishaw,* 428 F.2d 760, 764 (2d Cir. 1970).

Nor do we believe that the jury was led to its conclusion "[b]y a progression of questions each of which seems to require an answer unfavorable to the defendant." *United States v. Spock,* 416 F.2d at 182. It was this factor which led the *Spock* court to condemn the interrogatories used in that case. The questions submitted to the jury here merely tracked the elements of the crime charged, and "[t]here is no suggestion whatever that responding to the questions was ever meant by the judge to place any inhibitions upon the jury's right to acquit." *Heald v. Mullaney,* 505 F.2d 1241 (1st Cir. 1974), *cert. denied,* 420 U.S. 955, 95 S.Ct. 1339, 43 L.Ed.2d 432 (1975). Moreover, in *Spock,* the defense did enter a timely objection to the use of interrogatories, and it was not necessary to evaluate the procedure in terms of plain error.

Nor are we persuaded that the jury was misled on the matter of unanimity. The judge's charge left no doubt that the burden remained on the government to prove its case to the satisfaction of each juror. As the defense concedes, the real issue at trial was willfulness, and the jurors did not fail to grasp that point. The fact that they asked for a repetition of the charge on that aspect demonstrates their knowledge of its importance. The jury's request also shows that the interrogatories were being considered in connection with the charge and not merely in reliance upon the wording of the questions themselves. The record on polling refutes the defense contention that one juror perhaps did not wish to vote as he

did, since each juror answered affirmatively to every question, including those on willfulness.

A quite different question on the propriety of using the special verdict procedure would have been presented if timely objections had been made, but we are unable to find fundamental error in the posture of this case. *United States v. Schreiber,* 599 F.2d 534, 535 (3d Cir.), *cert. denied,* 444 U.S. 843, 100 S.Ct. 86, 62 L.Ed.2d 56 (1979), noted that this court "has been hospitable to claims of plain error in direct criminal appeals when it has been convinced that the error is 'grievous,' (citations) or 'so fundamental in nature as to deprive a party of fundamental justice,' (citations) or otherwise constitutes a 'manifest miscarriage of justice' (citations)." The circumstances here do not fall in any of those categories, and we are not persuaded that the jurors' ultimate resolution of the case would have been any different had they returned a general verdict.

The theoretical advantage to a defendant of a general verdict must be evaluated by the trial lawyer who is on the scene and can weigh the intangibles of the trial atmosphere far better than we. Defense counsel may well have believed that highlighting willfulness in the interrogatories as an element of the offense would focus the jury's attention on the truly significant issue at trial. He apparently believed that the interrogatories would not harm defendant and might help him. We cannot fault such defense strategy in hindsight and cannot overlook the significance of experienced trial counsel's lack of objection.[4]

In summary, although we do not recommend the use of special interrogatories in a relatively uncomplicated case such as this, we do not find fundamental error or unfairness to defendant here.

---

4. Defendant alternatively argues that if we do not find plain error in the circumstances presented here, that we should consider this issue under an assertion of ineffective assistance of counsel. Although, as mentioned earlier, defendant did raise ineffectiveness of trial counsel in post-trial motions, he did not do so

as to the use of the special interrogatories. Defendant therefore did not preserve this sixth amendment objection for direct appeal, and it cannot be heard at this time. *United States v. Garcia,* 544 F.2d 681 (3d Cir. 1976). In any event, we do not find the contention of ineffectiveness to be convincing.

The defense finally asserts that the district court erred in limiting cross-examination of Peter Guman, a government witness who had participated in one of defendant's transactions at issue. Defense counsel sought to elicit from Guman details of his own criminal offenses, as well as his knowledge of the government's belief that he had lied to its investigators. The judge ruled that Fed.R. of Evid. 608(b) barred the use of extrinsic evidence to prove specific instances of conduct to attack credibility. We do not find that ruling to be reversible error, if indeed it was error at all. Moreover, on cross-examination, the witness denied that he had any knowledge of the government's reservations about his credibility, and defense counsel was permitted to question Guman about his conviction. Defendant was able to extract the desired information, and thus has not demonstrated any adverse effect from the court's ruling.

Accordingly, since we find no reversible error, the judgment of the district court will be affirmed.

ALDISERT, Circuit Judge, dissenting.

"*Basta!*"

This is an Italian exclamation which, freely translated, means "Enough!" I now say "*Basta!*" on the question of special verdicts in criminal cases. I believe that the issue has sufficiently percolated in our cases for this court to exercise its supervisory power and prohibit special verdicts or special interrogatories in all criminal cases except where specifically requested by the defendant for cause shown.

To support my position I add nothing to the majority's thorough and dispassionate discussion. My disagreement goes only to

the bottom line. The majority are content to remind the trial courts again of our continued displeasure with the use of special verdicts in criminal cases and again to state the reasons for our position. As fairly set forth in the majority opinion, it is a displeasure we forcefully expressed in 1979 and 1980, but its genesis was not recent: Thirty-six years ago Judge Maris observed that special verdicts in criminal cases have become "virtually unknown in federal criminal practice" and that "[n]o provision for them is made in the Federal Rules of Criminal Procedure." *United States v. Noble,* 155 F.2d 315, 317 n.4 (3d Cir. 1946).[1] It is bottomed on the concept that, in our tradition, a jury may assume power which it has no right to exercise, that although its verdicts may be the result of compromise or mistake, they "cannot be upset by speculation or inquiry into such matters." *Dunn v. United States,* 284 U.S. 390, 393–94, 52 S.Ct. 189, 190–91, 76 L.Ed. 356 (1932), *quoted in Harris v. Rivera,* —— U.S. ——, —— n.15, 102 S.Ct. 460, 464 n.15, 70 L.Ed.2d 530 (1981) (per curiam).

Noting that special interrogatories are disfavored in criminal trials, we carefully stated in *United States v. Palmeri,* 630 F.2d 192, 202 (3d Cir. 1980), *cert. denied,* 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981), that this court "has established no *per se* rule against them." I adhere essentially to that position, but I now would prohibit their use except when requested by the defendants under certain circumstances; *e.g.,* as suggested in the majority opinion.[2]

To promulgate such a precept at this time would bid fealty to the common law tradition of developing law; a tradition that

---

1. The present Federal Rules of Criminal Procedure provide for verdicts in Rule 31. There is no explicit rule comparable to Rule 49 of the Federal Rules of Civil Procedure, entitled "Special Verdicts and Interrogatories." Rule 31(e) merely provides:

> Criminal Forfeiture. If the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any.

2. Moreover, where they are specifically required by statute or Supreme Court decision, trial courts must employ special interrogatories or special verdicts. *See, e.g., Haupt v. United States,* 330 U.S. 631, 641 n.1, 67 S.Ct. 874, 878 n.1, 91 L.Ed. 1145 (1947); *Cramer v. United States,* 325 U.S. 1, 36 n.45, 65 S.Ct. 918, 935 n.45, 89 L.Ed. 1441 (1945); Fed.R.Crim.P. 31(e); 18 U.S.C. § 1963(c); 21 U.S.C. § 848(a)(2).

"creeps from point to point, testing each step"[3] and is most characteristically a system built by gradual accretion from the resolution of specific problems. As Justice Holmes noted, the great growth of the common law came about incrementally.[4] It is our tradition to fashion a broad precept from a number of rules of decision, in a process characterized by experimentation. Rules of case law are treated not as final truths, "but as working hypotheses, continually retested in those great laboratories of the law, the courts of justice."[5] The common law has been described as a method "of reaching what instinctively seem[s] the right result in a series of cases, and only later (if at all) enunciating the principle that explains the pattern—a sort of connect the dots exercise."[6] For each legal principle that slowly emerges, there is a solid experience from rules of law themselves and from the publicly stated reasons that support them.[7]

My view is that there has been sufficient experimentation by the district courts with this discredited practice, and we now have the solid experience. We are now in a position to enunciate a controlling principle severely restricting the use of special verdicts and special interrogatories in criminal cases. The majority opinion carefully sets forth the history and the reasons for our disenchantment with a procedure that seeks to catechize a jury and thus infringe upon its power to deliberate freely as the conscience of the community.

What separates the majority and me is that I am less patient than they. They seem to be saying to the district courts,

"We will give you more time to heed the repeated warnings of this court." For me, that time is now.

Accordingly, I dissent and would reverse and order a new trial.

---

**3.** A. Whitehead, Adventures of Ideas ch. 2, § 6 (1967).

**4.** Holmes; *The Path of the Law*, 10 Harv.L.Rev. 457, 468 (1897).

**5.** M. Smith, Jurisprudence 21 (1909).

**6.** Ely, *The Supreme Court 1977 Term, Foreword: On Discovering Fundamental Values*, 92 Harv.L.Rev. 5, 32 (1978) (citing Amsterdam, *Perspectives on the Fourth Amendment*, 58 Minn.L.Rev. 349, 351–52 (1974)). *See also* Arnold, *Professor Hart's Theology*, 73 Harv.L.Rev. 1298, 1311–12 (1960); Holmes, *Codes and the Arrangement of the Law*, 44 Harv.L.Rev. 725, 725 (1931).

**7.** The cases demonstrate wide variations in experiments and experience. Thus, in *United States v. Palmeri*, 630 F.2d 192 (3d Cir. 1980), *cert. denied*, 450 U.S. 967, 101 S.Ct. 1484, 67 L.Ed.2d 616 (1981), predicate offenses had to be proved in order to convict five defendants under a 23-count RICO indictment. There was no similar complexity in the present case: there were only three counts against a single defendant. *See also* authorities listed in *United States v. Spock*, 416 F.2d 165, 182 n.41 (1st Cir. 1969).