600 A.2d 1211

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. M.L., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued August 27, 1991—Decided October 16, 1991.

14 

Before Judges LONG and GRUCCIO.

*Christine M. Coté,* Designated Counsel, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney).

*Marsetta Lee,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General, attorney).

PER CURIAM.

Tried to a jury, defendant M.L. was convicted of endangering the welfare of a child, *N.J.S.A.* 2C:24–4a. Defendant was sentenced to a four-year term of probation, conditioned upon her serving a six-month custodial term, obtaining employment, enrolling in a drug-treatment program, submitting to urine monitoring and attending psychological counselling. A $30 Violent Crimes Compensation Board penalty was also imposed.

On appeal, defendant contends:

1. The trial court erred in denying defendant's motion to dismiss the indictment against her.

2. The trial court erred in admitting defendant's statement which was obtained in violation of her *Miranda* rights.

3. There was no basis for the admission of *Rule* 55 testimony in this case.

4. It was reversible error to advise the jury that defendant had been arrested for shoplifting.

5. The trial court's use of special interrogatories were highly prejudicial and nullify the jury verdict in this case.

6. Considering the specific facts of this case, defendant's indictment and conviction under *N.J.S.A.* 2C:24-4 violated her constitutional rights to due process and trial by jury.

On January 25, 1988, at approximately 3:20 p.m., defendant was arrested for shoplifting at Jamesway Department Store in Hamilton Township. She and her five-year-old son, J.L., were transported to the Hamilton Township police station where the store security personnel filed a complaint against her for shoplifting. Unable to make bail, defendant arranged for J.S. to pick up J.L. from the police station.[1] J.S. took the child to K.C., defendant's friend who lived in the same apartment complex as defendant. When J.S. arrived at K.C.'s apartment at approximately 6:45 p.m., K.C. expressed concern for the whereabouts of defendant's 15–month–old child which prompted her to call the East Windsor Police Department. She spoke to Detective Steven Verdakis who, in turn, called Hamilton Township Patrolman Robert Applegate and informed him of his conversation with K.C. Patrolman Applegate immediately asked defendant the whereabouts of her other child. Defendant told him that her other child was with a babysitter, K.J. However, she could not recall K.J.'s apartment number and claimed that K.J. did not have a telephone.

Faced with this situation, Detective Verdakis and Patrolman Schriten then went to defendant's apartment complex, spoke to the superintendent and obtained a pass key to defendant's apartment. When the officers located the apartment, they saw a pit bull tied outside. The officers, together with K.C. and her

---

[1] Evidence adduced at the *Miranda* hearing suggested that J.S. was J.L.'s father.

sister, who had accompanied them, then entered the apartment. In their testimony, they described the apartment as filthy; *i.e.*, littered with dirty diapers and laundry, plates of spoiled food and dog feces. In the midst of this, they found defendant's unattended infant child, C.L., asleep in a playpen. C.L. was in desperate need of a diaper change and was sweating in the 90° heat of the apartment. The officers gave C.L. to K.C. and her sister for temporary care.

At approximately 10:30 p.m. Detective Verdakis went to Hamilton Township police station, where defendant was incarcerated, and served a complaint on defendant for endangering the welfare of a child.

Defendant rested without producing any evidence. It was essentially upon these facts that defendant was found guilty of the charge.

▆ Defendant contends that the trial court erred in refusing to dismiss the indictment. We find this issue without merit. *R.* 2:11–3(e)(2). The indictment charged that:

[M.L.] on or about the 25th day of January, 1988, in the Township of East Windsor in the County aforesaid, and within the jurisdiction of this Court, having a legal duty for the care of, or who has assumed responsibility for the care of C.L., born October 26, 1986, did cause harm to C.L. making C.L. an abused or neglected child as defined in P.L.1974, c. 119, s. 1, L.1915, c. 246, s. 1, L.1944, c. 196, s. 1 (C. 9:6–1, 9:63 and 9:6–8.21), contrary to the provisions of N.J.S.[A.] 2C:24–4(a), and against the peace of this State, the Government and dignity of the same.

*N.J.S.A.* 2C:24–4(a), in pertinent part, provides that:

Any person having a legal duty for the care of a child or who has assumed responsibility for the care of a child ... who causes the child harm that would make the child an abused or neglected child as defined in R.S. 9:6–1, R.S. 9:6–3 and P.L.1974, c. 119 § 1 (C. 9:6–8.21) is guilty of a crime of the third degree.

Our review of the record indicates that defendant's motion to dismiss the indictment was properly denied. Our review further indicates that the prosecution was based upon a clear showing that the child was neglected and harmed and that evidence exists in the record from which the jury could arrive at such a conclusion.

■ The test of the sufficiency of an indictment is not whether it could have been more precise and definite, but whether it contains elements of the offense intended to be charged and gives the accused reasonable notice of the act or acts he is called upon to defend. *Scott v. United States*, 231 *F.Supp.* 360 (D.C.N.J.1964), *aff'd*, 342 *F.*2d 813 (3d Cir.1965); *State v. Torrance*, 41 *N.J.Super.* 445, 125 *A.*2d 403 (App.Div. 1956); *see State v. Bonaccurso*, 227 *N.J.Super.* 159, 545 *A.*2d 853 (Law Div.1988).

■ That test was met here. Moreover, *R.* 3:10-2 provides that any objections based on defects in the institution of the prosecution or in the indictment must be raised by motion before trial and that the failure to do so constitutes a waiver thereof, absent a showing of good cause. *R.* 3:10-2 (1991). Additionally, defendant's failure to object to the indictment by way of a motion or an application for a bill of particulars until the eve of trial, months after the indictment, procedurally bars defendant from asserting this claim.

■ Defendant next contends that the trial court erred in admitting her statement that the infant was in the care of a babysitter when, in fact, it was not. The trial judge made his findings which, in sum, indicate that the statements were not protected by *Miranda v. Arizona*, 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966), and, if protected, were nevertheless, under state and federal decisions, admissible. He found the inquiry unrelated to any police investigation of the charge for which defendant was indicted; that the question was routine, and incident to an arrest and booking; that it was unfocused and, if anything, the question was asked out of concern for the safety of C.L.

We agree with this analysis and, as the trial judge indicated:

It seems clear to this court that it is every bit as important to a police officer who learns there is another child involved or that the arrestee has a child who may not be ... being cared for and is a younger child, that there certainly is a public safety consideration that must be taken into account in that area. And I

find that even if it were subject to Miranda under these circumstances, there is an exception to it.

We agree with the judge's findings and his assessment of the witness's testimony. We accord deference to the trial judge's ability to evaluate the credibility of the witness and to make factual findings upon the testimony before him. *State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964). Here, he determined that the officer was credible and there was no interrogation. *Rhode Island v. Innis*, 446 *U.S.* 291, 100 *S.Ct.* 1682, 64 *L.Ed.*2d 297 (1980).

*Miranda* sets forth a balance between the rights of the government and those accused of criminal activity. That balance is enhanced by the requirement that a person in custody be advised of the rights guaranteed by the constitution. *Miranda, supra,* 384 *U.S.* at 444, 86 *S.Ct.* at 1612, 16 *L.Ed.*2d at 706–07. Our state law is consonant with that principle. *See State v. Graves*, 60 *N.J.* 441, 447, 291 *A.*2d 2 (1972); *State v. Godfrey*, 131 *N.J.Super.* 168, 175, 329 *A.*2d 75 (App.Div.1974), *aff'd*, 67 *N.J.* 267, 337 *A.*2d 371 (1975). *Miranda*'s safeguards "come into play whenever a person in custody is subjected to either express questioning or its functional equivalent." *Innis, supra,* 446 *U.S.* at 300–01, 100 *S.Ct.* at 1689, 64 *L.Ed.*2d at 307–08. Not all statements obtained by the police after taking a person into custody, however, must be considered the product of interrogation. *Id.* at 299, 100 *S.Ct.* at 1689, 64 *L.Ed.*2d at 307.

The definition of interrogation has been extended only to a police officer's words or actions that the officer "should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 301, 100 *S.Ct.* at 1689–90, 64 *L.Ed.*2d at 308; *State v. Ramos*, 217 *N.J.Super.* 530, 537, 526 *A.*2d 284 (App.Div.1987) (footnotes omitted). It is abundantly evident that here the officer had no reason to know that the response would lead to circumstances which resulted in this charge against defendant. In order to constitute interrogation, police conduct "must reflect a measure of compulsion above and

beyond that inherent in the custody itself." *Innis, supra,* 446 *U.S.* at 300, 100 *S.Ct.* at 1689, 64 *L.Ed.*2d at 307. Thus, booking procedures and the routine questions associated therewith are ministerial in nature and beyond the right to remain silent. *United States ex rel. Hines v. LaVallee,* 521 *F.*2d 1109, 1112–13 (2d Cir.1975), *cert. den. sub nom., Hines v. Bombard,* 423 *U.S.* 1090, 96 *S.Ct.* 884, 47 *L.Ed.*2d 101 (1976); *State v. Cunningham,* 153 *N.J.Super.* 350, 352, 379 *A.*2d 860 (App.Div. 1977). Even unexpected incriminating statements made by in-custody defendants in response to non-investigative questions by the police without prior *Miranda* warnings are admissible. *LaVallee, supra,* 521 *F.*2d at 1113; *State v. Barnes,* 54 *N.J.* 1, 6, 252 *A.*2d 398 (1969), *cert. den.,* 396 *U.S.* 1029, 90 *S.Ct.* 580, 24 *L.Ed.*2d 525 (1970); *Ramos, supra,* 217 *N.J.Super.* at 537, 526 *A.*2d 284. Here, the innocent inquiry was concern for the safety of a child who was younger than the five-year-old child released to J.S.

Defendant next contends that customary *Miranda* analysis is inapplicable in light of the fact that such cases deal with statements elicited following *Miranda* warnings. Here, however, the police did not conduct an interrogation with respect to the endangerment charge while defendant was in custody. The posed question was premised upon concern for the child and did not anticipate an incriminating response. Hence, *Miranda* warnings were not constitutionally mandated.

We also agree that the subsequent use of the incriminating statement is not relevant in determining whether it was the product of a custodial interrogation. This matter is most akin to *Ramos, supra,* (where question about defendant's glasses did not constitute a police interrogation in that statement was not intended to elicit incriminating evidence, but to prod the defendant to dress). Here, the police were clearly not seeking to elicit evidence as to the shoplifting charge; that event was completed. Additionally, the police had no inkling of defendant's conduct regarding her child's safety and welfare and could not by any stretch of imagination be said to be seeking

incriminating evidence. We find no similarity to *State v. Davis*, 67 *N.J.* 222, 337 *A.*2d 33 (1975), relied upon by defendant. There, the police sought to obtain incriminating evidence concerning defendant's violation of parole, which the prosecutor sought to introduce at trial. *Id.* at 227–28, 337 *A.*2d 33. In sum, we find no merit in defendant's allegation on this issue.

Defendant next contends that the trial judge erred by ruling that evidence of other instances of child neglect was admissible at trial under *Evid.R.* 55. While this issue is of concern, we find the trial judge carefully excluded some of the evidence sought to be admitted and restricted the state's proffer to that connected to the conduct complained of in the indictment.

*Evid.R.* 55 provides:

Subject to Rule 47, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his disposition to commit crime or civil wrong as the basis for an inference that he committed crime or civil wrong on another specified occasion but, subject to Rule 48, such evidence is admissible to prove some other fact in issue including motive, intent, plan, knowledge, identity, or absence of mistake or accident.

Under this rule, evidence of other criminal acts by a defendant is admissible so long as it is relevant to some matter in issue and is not received simply to show the general disposition of defendant to commit crime. *State v. Wright*, 132 *N.J.Super.* 130, 148, 332 *A.*2d 614 (App.Div.1974), *rev'd on dissent*, 66 *N.J.* 466, 332 *A.*2d 606 (1975). Evidence of the commission by defendant of the same or similar acts prior to, contemporaneous with, or subsequent to the offense in question may be properly admissible under *Evid.R.* 55. *Id.* at 148, 332 *A.*2d 614.

Where the proof of similar acts by a defendant tends to establish that the offense for which defendant presently is on trial was not inadvertent, accidental, unintentional, or without guilty knowledge, such evidence is almost universally admitted. *Id.* (quoting *McCormick on Evidence* § 190 (2d ed. 1972)). Furthermore, here, as in *State v. Hummel*, 132 *N.J.Super.* 412, 334 *A.*2d 52 (App.Div.), *certif. den.*, 67 *N.J.* 102, 335 *A.*2d 54

(1975), the other acts are "so intertwined in time, place and circumstance" with the present charges as to evidence a continuous state of mind that they are admissible under *Evid.R.* 55. *Id.* at 425–26, 334 *A.*2d 52.

 Following a hearing, the court determined that the testimony regarding defendant's attempt to abort C.L. would be excluded because it would create substantial prejudice. The court, however, ruled admissible the testimony regarding defendant's constantly leaving the children alone and evidence regarding the unsanitary conditions of defendant's apartment. In limiting the evidence which was admitted, the trial judge was satisfied that both witnesses had demonstrated that they had visited defendant at least four times a week since she moved into the complex and that they had observed defendant's neglect and abandonment of her children.

Defendant suggests that this testimony was highly prejudicial and of questionable probative value. Defendant characterizes the testimony as not credible, inconsistent, ambiguous and lacking specificity. She says she was prosecuted for being a "bad mother."

The court viewed the witness's testimony in its entirety and found it credible. Thus, in admitting the evidence pursuant to *Evid.R.* 55, the trial judge, in accord with *Evid.R.* 6, instructed the jury as to the limited purposes for which the testimony could be used. He emphasized that the testimony could be used for the limited purpose of establishing defendant's motive, purpose and state of mind on the day she committed the offense charged. In addition, in his charge, the trial judge fully outlined to the jury the nature of the charge against defendant, the persistence of the presumption of innocence and the obligation of the state to prove every element of the crime beyond a reasonable doubt.

 Defendant posits that even if the testimony of K.C. and her sister regarding her prior conduct was credible, this evidence did not constitute a crime or civil wrong. In point four of

her brief, she contends that it was reversible error for the court to admit evidence that she had been arrested for shoplifting since this evidence was highly prejudicial. We disagree and find the evidence was properly admitted. We find that it was necessary to demonstrate why defendant was in police custody, that she could not make bail and that she chose not to tell the authorities that her child was alone in her apartment. We again observe that the trial judge excluded the details of defendant's shoplifting, finding that it would create undue prejudice under *Evid.R.* 4 but, nevertheless, held that it was necessary for the jury to understand how the custodial situation developed.

We do not find the situation here analogous to *State v. Balles*, 47 *N.J.* 331, 336, 221 *A.*2d 1 (1966), and *State v. Neal*, 229 *N.J.Super.* 28, 550 *A.*2d 998 (App.Div.1988). Nor do we find that the jury's attention was focused on the shoplifting offense, to defendant's prejudice. The references to the shoplifting were not extensive. The evidence here was restricted to a crucial issue in this case, defendant's motive and intent.

Indeed, we are compelled to point out that "[i]n criminal prosecutions, whenever the motive or the intent of the accused is important and material, a somewhat wider range of evidence is permitted in showing such motive or intent than is allowed in the support of other issues." *State v. Rogers*, 19 *N.J.* 218, 228, 116 *A.*2d 37 (1955); *see also State v. Carter*, 91 *N.J.* 86, 449 *A.*2d 1280 (1982), (citing, *Rogers, supra,* 19 *N.J.* at 228, 116 *A.*2d 37). *See also United States v. Hattaway*, 740 *F.*2d 1419, 1425 (7th Cir.1984), *cert. den.*, 469 *U.S.* 1089, 105 *S.Ct.* 599, 83 *L.Ed.*2d 708 (1984). Otherwise, the State could not disclose the purpose of the act in which the very gist of the offense may consist. *Rogers, supra,* 19 *N.J.* at 228, 116 *A.*2d 37. Our courts continue to follow *Rogers. See State v. Baldwin*, 47 *N.J.* 379, 391, 221 *A.*2d 199 (1966), *cert. den.*, 385 *U.S.* 980, 87 *S.Ct.* 527, 17 *L.Ed.*2d 442 (1966) (evidence that defendant killed victim to silence him as a prospective witness held admissible); *State v. Royster*, 57 *N.J.* 472, 484–85, 273 *A.*2d 574 (1971)

(evidence that defendant threatened victim several weeks before the murder held admissible).

While relevant evidence traditionally has been broadly defined, such evidence still may be excluded when its probative value is substantially outweighed by the risk that its admission will create substantial danger of undue prejudice or if confusing the issues or misleading the jury. *Evid.R.* 4; *State v. Deatore*, 70 *N.J.* 100, 358 *A.*2d 163 (1976). In exercising its discretion on this question, the trial judge must rely upon his experience, knowledge and understanding of human conduct and motivation. *State v. Allison*, 208 *N.J.Super.* 9, 17, 504 *A.*2d 1184 (App.Div.1985); *McCormick on Evidence*, § 185 at 541 (3rd Ed.1984).

Here, the jury was given the following instruction pursuant to *Evid.R.* 6:

> Ladies and gentlemen, before we go on, you just heard testimony by this witness on January 25th, 19— ... the date in question, [M.L.] was arrested for shoplifting.
>
> Now, the Court has permitted you to hear this testimony but only for purposes of you understanding the background and reason the defendant was in police custody which resulted in the additional contacts that are going to be made during testimony later in the trial.
>
> I want you to understand that you are not to consider the guilt or innocence of the defendant in this case based upon the fact that she was arrested for shoplifting. That incident is to have no part in your deliberations or verdicts in this case. It is simply to indicate to you why she was in police custody.

This evidence was necessary to prevent the jury from engaging in unbridled speculations as to why defendant was not with her child, or how the police became involved. The evidence was admitted under proper cautionary instructions for the sole purpose of understanding the background and reasons that defendant was in police custody and how the officer made the contact with defendant. Without such an instruction, the jury could have engaged in unbridled speculation concerning the reason for M.L.'s arrest.

In sum, the evidence was relevant and properly introduced for a limited purpose under a carefully crafted charge to the jury. We find no error under these circumstances.

Although not objected to below, defendant contends that the trial court erred in submitting special interrogatories to the jury. Since the issue was not raised below, defendant is precluded from raising this issue on appeal unless the appellant can demonstrate plain error, that is error capable of producing an unjust result. *R.* 2:10–2.

■ Special interrogatories are not looked upon with favor; however, there is no *per se* rule forbidding their use. *State v. Simon,* 79 *N.J.* 191, 204, 398 *A.*2d 861 (1979); *State v. McAllister,* 211 *N.J.Super.* 355, 511 *A.*2d 1216 (App.Div.1986); *United States v. Palmeri,* 630 *F.*2d 192 (3d Cir.1980), *cert. den.,* 450 *U.S.* 967, 101 *S.Ct.* 1484, 67 *L.Ed.*2d 616 (1981); *United States v. Desmond,* 670 *F.*2d 414 (3d Cir.1982).

■ In *Simon,* our Supreme Court fully explored the vices inherent in the use of special interrogatories in criminal prosecutions. The court there opined that the "singular vice of special interrogatories, particularly in a criminal trial, is their potential for destroying the ability of the jury to deliberate upon the issue of guilt or innocence free of extraneous influences," *Simon, supra,* 79 *N.J.* at 204, 398 *A.*2d 861, and noted that special interrogatories can "constitute a form of mental conditioning which is antithetical to the untrammeled functioning of the jury." *Id.* at 200, 398 *A.*2d 861.

Here, after properly instructing the jury on its functions, the legal principles and the State's burden of proof, the court presented a verdict form which read as follows:

Do you find the defendant [M.L.] guilty or not guilty of the indictment charging her with endangering welfare of a child?

Guilty ___ Not Guilty ___

If you find the defendant not guilty, return to the courtroom.

If you find the defendant guilty proceed to number 1a, 1b, 1c, 1d and 1e.

Do you find beyond a reasonable doubt:

1a. That the defendant abandoned the child thereby willfully forsaking the child.

Yes ___ No ___

1b. That defendant abandoned the child by failing to care for and keep control and custody of the child so that the child was exposed to physical risk without proper and sufficient protection.
Yes ___ No ___

1c. That defendant was cruel to the child by exposing the child to unnecessary hardship that tended to injure the health or physical well-being of the child.
Yes ___ No ___

1d. That the defendant neglected the child by willfully failing to provide proper and sufficient food, clothing, maintenance and a clean and proper home.
Yes ___ No ___

1e. That the defendant neglected the child by failing to do or permit to be done any act necessary for the child's physical well being.[2]
Yes ___ No ___

The jury subsequently returned a guilty verdict and answered the interrogatories in the affirmative. During its deliberations, the jury sent a note asking "what constitutes harm? Is the harm in number three [1c] the same as number four [1d]. Can we find harm as that which causes the abuse and neglect."

After discussing the note with counsel, the court instructed the jury that the harm in (1c) on the verdict sheet would be the cruelty to the child by exposing the child to unnecessary hardship that tended to injure the health or physical well-being of the child. The harm alleged in (1d) of the verdict sheet would be the neglect of the child by willfully failing to provide proper and sufficient food, clothing, maintenance and a clean and proper home. The court denied defense counsel's request to charge the jury that there had to be actual physical or mental harm without regard for whether the child was an abused or neglected child.

Special interrogatories are disfavored, yet not prohibited, by our Court Rules or decisions. Here, we find no error in their use. Indeed, some courts have expressed the positive value of such special interrogatories. For example, *see Palmeri, supra,* 630 *F.*2d at 194 (in prosecution for receipt of kickbacks, there

---

[2]The defense noted that the court failed to include the language of "causing harm to the child" in its form. The court responded that it had fully explained the elements of the offense in the charge.

was no error in use of special interrogatories as they were employed to decrease likelihood of juror confusion in case that involved multiple defendants and numerous counts); *Desmond, supra,* 670 *F.*2d at 416 (in internal revenue prosecution for failing to report income during three taxable years special interrogatories did not lead the jury to its conclusions by a progression of questions all of which required an answer unfavorable to defendant and, therefore, did not rise to level of plain error where jury's ultimate resolution would not have been different had they returned a general verdict); *United States v. Ofchinick,* 883 *F.*2d 1172 (3d Cir.1989) (holding that principal advantage of special verdict, instead of general verdict, is that an error may only affect a few of the trial court's findings, thus limiting a new trial or vacation of the judgment to the issues covered by the tainted findings); *cf. Franklin v. Lyraugh,* 487 *U.S.* 164, 108 *S.Ct.* 2320, 101 *L.Ed.* 2d 155 (1988), *reh. den.,* 487 *U.S.* 1263, 109 *S.Ct.* 25, 101 *L.Ed.*2d 976 (1988); *Pritchard v. Liggett and Myers Tobacco Co.,* 370 *F.*2d 95 (3d Cir.1966), *cert. den.,* 386 *U.S.* 1009, 87 *S.Ct.* 1350, 18 *L.Ed.*2d 436 (1967).

We find this case distinguishable from *Simon* and *McAllister,* relied upon by defendant. There the trial courts did not charge a general verdict to the jury, but rather submitted only special interrogatories. This error invaded the jury's province by assuming the responsibility of convicting or acquitting defendant. Here, at the beginning of the charge, the court instructed the jury as to defendant's guilt or innocence of the charged offense and thereafter submitted the special interrogatories to the jury.

We find the inquiries made by the jury during its deliberation in no way suggested that the jurors were confused by the interrogatories. Rather, the jurors sought clarification on an element of the offense.

Defendant claims that the provision of *N.J.S.A.* 2C:24–4(a) which imposes criminal sanctions for causing a child harm that would make the child an "abused or neglected child" is vague

on its face and in its application to her. Moreover, defendant argues the trial court misinterpreted the statute as not requiring the State to show that the child suffered physical harm, thereby incorporating an impermissible presumption into the statute which relieved the State of its burden to prove defendant's guilt beyond a reasonable doubt. These constitutional challenges were not raised below and hence defendant is precluded from raising them on appeal. *R.* 2:10–2. Nevertheless, our analysis reveals that the statute is facially constitutional and its application to defendant is likewise valid. Moreover, the court properly instructed the jury that the State had proven each element of the offense to establish defendant's guilt beyond a reasonable doubt.

The vagueness principle requires that the terms of a law must enable a person of "common intelligence, in light of ordinary experience" to understand whether contemplated conduct is lawful. *State v. Cameron,* 100 *N.J.* 586, 591, 498 *A.*2d 1217 (1985); *State v. Lashinsky,* 81 *N.J.* 1, 18, 404 *A.*2d 1121 (1979). "Thus, the constitutional ban on vague laws is intended to invalidate regulatory enactments that fail to provide adequate notice of their scope and sufficient guidance for their application." *Cameron, supra,* 100 *N.J.* at 591, 498 *A.*2d 1217. The requirement of statutory clarity "is essentially a due process concept grounded in notions of fair play." *Id.; Lashinsky, supra,* 81 *N.J.* at 17, 404 *A.*2d 1121. The level of judicial scrutiny and the degree of required clarity is dependent on the purpose of the statute, the context in which the law is challenged, the conduct that is subject to its strictures, the nature of the authorized punishment, and the potential impact of the statute upon activities that are constitutionally protected. *Cameron, supra,* 100 *N.J.* at 594, 498 *A.*2d 1217; *Village of Hoffman Est. v. Flipside Hoffman Est.,* 455 *U.S.* 489, 102 *S.Ct.* 1186, 71 *L.Ed.*2d 362 (1982). Thus, the vagueness principle requires that a law be sufficiently clear and precise so that people are given fair notice and adequate warning of the law's

reach. *Town Tobacconist v. Kimmelman*, 94 *N.J.* 85, 125 n. 21, 462 *A.*2d 573 (1983).

Defendant contends that *N.J.S.A.* 2C:24–4(a), which imposes criminal sanctions on one who causes harm to a child that would make the child an abused or neglected child is vague in that "it is difficult to ascertain merely by reviewing Title 9 what will constitute a criminal act." Moreover, defendant posits that the Legislature did not intend for Title 9 conduct to be criminalized.[3] We disagree and find that the provision of *N.J.S.A.* 2C:24–4 under which defendant was convicted is clear. The language of the statute provides that one who causes a child harm that would make a child an "abused or neglected" child under Title 9 is guilty of endangering the welfare of a child. This language is clearly and readily capable of comprehension. The Legislature has the authority to make such conduct defined in Title 9 an element of the Criminal Code. *See State v. Lee*, 96 *N.J.* 156, 166, 475 *A.*2d 31 (1984).

Defendant points to other sections of Title 9 which declare certain conduct, such as the habitual use of profane or indecent language, as constituting child neglect and thus urges that it would be "absurd" to impose criminal sanctions for such conduct. Here, defendant left her 15–month–old child unattended. When arrested for shoplifting and unable to make bail, she made no provision for that child. Several hours passed and defendant maintained her silence. The police knew nothing of the child's existence but inquired as to the child only when it was suggested to them that another child may be missing. Defendant did not ask to speak to one of her friends but rather, claimed that the child was with a babysitter, knowing, as was developed by investigation and presented in evidence, that her

---

[3]Defendant offers the unpublished opinion, *State v. Scherer*, A–1581–87T4 (App.Div. Dec. 6, 1989), in support of this argument. We have reviewed *Scherer* and find it inapplicable here as it is clearly distinguishable on the facts. Our opinion should not be read as to indicate our agreement or disagreement with what is said in that opinion.

child was home alone, without food or water, in an unsafe environment. This 15–month–old child was at risk of harm. The child was alone for at least four hours. We do not read the Legislation as calling for a demonstration of actual physical harm but, even if so required, we deem these circumstances to satisfy such a definition.

We find support for this proposition where we have upheld convictions under *N.J.S.A.* 2C:24–4(a). *See, e.g., Schroeder v. Perkel,* 87 *N.J.* 53, 432 *A.*2d 834 (1981) (recognizing parent's criminal liability under *N.J.S.A.* 2C:24–4 and *N.J.S.A.* 9:6–1); *State v. Sanders,* 230 *N.J.Super.* 233, 553 *A.*2d 354 (App.Div. 1989) (defendant's admission of abandoning child constituted sufficient factual basis to sustain her plea of guilty to charge of endangering welfare of child under *N.J.S.A.* 2C:24–4(a)); *State v. Bass,* 221 *N.J.Super.* 466, 492, 535 *A.*2d 1 (App.Div.1987) (in aggravated manslaughter prosecution failure to provide medical attention for the child's injuries was harm sufficient to make child an "abused or neglected child" within the meaning of *N.J.S.A.* 2C:24–4(a)).

We have no hesitancy in stating that allowing a 15–month–old child to remain unattended for an indefinite period is in itself harmful. The jury could likewise so find.

Lastly, defendant contends that the trial court improperly engrafted an impermissible presumption on the statute; *i.e.,* harm is presumed once the State establishes the Title 9 element, which resulted in the State not having to prove every element of the offense. The court instructed the jury that the State had to prove each and every element beyond a reasonable doubt. The court further instructed the jury that the State had to prove "it was defendant's conscious object or design to cause harm to [C.L.] and that the child's becoming an abused or a neglected child" and subsequently instructed the jury that harm could be determined pursuant to Title 9.

"The validity of a presumption rests upon two basic criteria. The first is simply that there must be a rational connection in

terms of logical probability between the proved fact and the presumed fact." *State v. McCandless*, 190 *N.J.Super.* 75, 79, 461 *A.*2d 1205 (App.Div.1983); *see State v. Ingram*, 98 *N.J.* 489, 488 *A.*2d 545 (1985). With respect to the first criterion, the presumption will be sustained "if, as a matter of common experience, it is more likely than not that the fact to be presumed follows from the facts giving rise to the presumption." *McCandless, supra*, 190 *N.J.* at 79, 461 *A.*2d 1205. *See Sandstrom v. Montana*, 442 *U.S.* 510, 99 *S.Ct.* 2450, 61 *L.Ed.*2d 39 (1979); *County Court of Ulster County v. Allen*, 442 *U.S.* 140, 99 *S.Ct.* 2213, 60 *L.Ed.*2d 777 (1979). The second criterion for the validity of a statutory presumption respecting an element of a criminal offense is that it may not be accorded mandatory effect. *McCandless, supra*, 190 *N.J.* at 79, 461 *A.*2d 1205.

It is a matter of common experience that a person who abuses or neglects a child, such as defendant has done here, causes the child harm. Hence, the first criterion set forth in *Ingram* and *McCandless* is met. Moreover, the presumption was not given mandatory effect in that the jury was merely permitted to infer that the child was harmed.

Affirmed.