842 A.2d 859 (2004)
367 N.J. Super. 324
STATE of New Jersey, Plaintiff-Respondent,
v.
Barry SHERMAN, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 2004.
Decided March 4, 2004.
*861 L. Barret Boss (Asbell Moffitt & Boss) of the Washington, D.C. bar, admitted pro hac vice, and Robert S. Bonney, Jr. argued the cause for appellant (Bonney, Epstein & Gilberti and Mr. Boss, attorneys; Henry W. Asbill, Mr. Boss, Peter B. Paris and Mr. Bonney, on the brief).
Robert A. Honecker, First Assistant Prosecutor, argued the cause for respondent (John Kaye, Monmouth County Prosecutor, attorney; Mr. Honecker, of counsel, and Mary R. Juliano, Assistant Prosecutor, on the brief).
Before Judges HAVEY, FALL and PARRILLO.
*860 The opinion of the court was delivered by FALL, J.A.D.
On November 8, 2001, defendant Barry Sherman abducted a six year-old female child from in front of her home in Spring Lake for the purpose of holding her for ransom, and kept the child in his mother's home in Neptune City for approximately twenty-two hours, until abandoning his plan and dropping her off in front of the Monmouth Mall in Eatontown. As instructed by defendant, the child approached the first adults she encountered, identified herself, the police were notified, and she was safely returned home. The only harm suffered by the child was emotional and psychological in nature in the form of a post-traumatic stress disorder.
*862 Defendant was charged in Monmouth County Indictment Number XX-XX-XXXXX with first-degree kidnapping, contrary to N.J.S.A. 2C:13-1a (count one); third-degree criminal restraint, contrary to N.J.S.A. 2C:13-2a (count two); two counts of second-degree endangering the welfare of a child, contrary to N.J.S.A. 2C:24-4a (counts three and four); and third-degree terroristic threats, contrary to N.J.S.A. 2C:12-3a (count five).
After entering conditional pleas of guilty to first-degree kidnapping and to one count of second-degree endangering the welfare of a child, defendant was sentenced to a fifteen-year term of imprisonment on the kidnapping conviction, with an 85% period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, and to a consecutive term of seven years imprisonment on the endangering conviction. He now appeals from his conviction on the first-degree kidnapping charge, and from the sentence imposed on his second-degree conviction for endangering.
Under N.J.S.A. 2C:13-1c, kidnapping is a first-degree crime unless the "actor releases the victim unharmed and in a safe place."[1] This appeal requires us to primarily address the following three issues concerning this so-called "released-unharmed" section of the kidnapping statute: (1) whether psychological or emotional harm without bodily injury constitutes "harm" within the intendment of that statutory provision; (2) whether the released unharmed provision of N.J.S.A. 2C:13-1c is a "grading mechanism" or a "material element" of the crime of first-degree kidnapping for which a culpability requirement adheres; and (3) where the kidnapper releases the victim in a safe place, whether the Legislature intended to make the crime of kidnapping a first-degree offense only if the defendant caused the psychological or emotional harm beyond that harm caused by the kidnapping itself. We must also address the issue of whether the trial court properly followed applicable sentencing criteria and guidelines when imposing sentence on the second-degree endangering conviction.
In accordance with the Supreme Court's ruling in State v. Federico, 103 N.J. 169, 174-76, 510 A.2d 1147 (1986), and our decision in State v. Casilla, 362 N.J.Super. 554, 566-67, 829 A.2d 1095 (App.Div.), certif. denied, 178 N.J. 251, 837 A.2d 1093 (2003), in order to establish the crime of first-degree kidnapping against a kidnapper who has released the victim prior to his or her apprehension, the State must prove beyond a reasonable doubt that the victim had been harmed or had not been released in a safe place. Thereby, disproving unharmed release is an element of the offense of first-degree kidnapping. Ibid.
We hold that the concept of "harm," as embodied by the released unharmed provision of N.J.S.A. 2C:13-1c, includes emotional or psychological harm suffered by the victim. We also hold that disproving unharmed release is a "material" element of the crime of first-degree kidnapping, requiring the State to prove that a defendant "knowingly" harmed or "knowingly" released the victim in an unsafe place. We conclude that the "harm" component of the unharmed release provision contained in N.J.S.A. 2C:13-1c focuses on the conduct of the kidnapper during the purposeful removal and holding or confining of the victim, as distinguished from the type of harm inherent in every kidnapping. Therefore, when a victim is released in a safe place prior to the kidnapper's apprehension, as here, in order to prove that the kidnapper is guilty of first-degree kidnapping, *863 the State must prove beyond a reasonable doubt that the kidnapper knowingly caused physical, emotional or psychological harm to the victim. We conclude that the trial court erred in denying defendant's motion seeking modification of the model jury charge on the first-degree kidnapping charge to reflect these requirements. Pursuant to the terms of the plea agreement, the matter is remanded to the Law Division for defendant's entry of a substitute plea of guilty to second-degree kidnapping and for sentencing thereon.
We reject defendant's argument that the trial court erred in concluding that the unharmed release provisions of the kidnapping statute are not unconstitutionally vague, facially or as applied. We also reject defendant's contention that the trial court erred in denying his application to dismiss the first-degree kidnapping charge on the basis that the grand jury proceedings were defective.
Our review of the sentence imposed on defendant's second-degree endangering conviction discloses that the findings of the sentencing judge on the aggravating factors are not supported by sufficient, credible evidence in the record. Accordingly, we are constrained to vacate the sentence imposed on the endangering conviction and remand the matter to the trial court for resentencing.

I.
We now examine the specific facts and circumstances of this case. Defendant signed a lengthy and detailed confession in his handwriting, in which he explained that he had been suffering from emotional distress and depression and had formulated a plan to kidnap a child in order to obtain monies that would allow him to purchase a sailboat and "`sail away' from his life and the pain." Defendant, who lived with his mother in Neptune City, waited until his mother went on an extended vacation to Spain before executing his plan. Defendant determined that he would obtain a child from Spring Lake, a nearby community, hold the child in his mother's home while she was away, tape a ransom note to the flag pole on Third Avenue in Spring Lake, demand that cash be deposited under a ramp to the beach in Ocean Grove, and then drop the child off at a shopping mall once the ransom had been paid. As part of his plan, about a week before the kidnapping, defendant wrote a ransom note that asked for $175,000.
Defendant made several attempts to abduct a child but could not do it. Then, on November 8, 2001, while driving "up and down the roads" in Spring Lake, he saw "two little girls sitting outside a house." He parked his vehicle, approached them, and told one, A.C., a six year-old child, that "we're just going to go for a little ride." Despite A.C.'s screams, defendant put her in his car and drove away. A.C. calmed down quickly after he reassured her.
After abducting A.C., defendant brought the child to his mother's home, where A.C. sat in the living room and watched cartoons. Defendant gave her Cheerios cereal, apple juice and yogurt. Shortly thereafter, defendant put A.C. in a utility room in which he had built a "fort" from cushions, and left the home for approximately ten minutes to call the Spring Lake Police Department from a public telephone at a nearby convenience store. Defendant spoke with Detective William Coyle at approximately 12:48 p.m., advising him of the location of the ransom note. The note provided instructions to the child's parents for delivering the ransom and warned that if he was observed, apprehended, or interfered with, the child would be immediately killed.
*864 Approximately one hour later, defendant left the house again, driving to the Monmouth Mall in Eatontown to make a second telephone call to the Spring Lake Police Department, inquiring whether the ransom note had been found. That call was placed at approximately 1:52 p.m. Prior to leaving the house to make that call, defendant had again placed A.C. in the utility room; he was gone from the house for approximately forty-five minutes.
Defendant had used the utility room twelve years earlier as a dark room for developing photographs. A large plastic bottle of acetic acid, a chemical used in developing film, which had not been used in twelve years, was located on a counter in that room. The bottle had a "Danger, poison" warning label, and defendant stipulated that this chemical "created a risk of serious bodily injury to the child." However, defendant asserted he did not intend to create any such risk.
The utility room had light and heat, and defendant provided A.C. with a book, a game, and apple juice while he was gone. Defendant then closed the door to the utility room and slid a couch in front of it to prevent A.C. from leaving. On both occasions when he left A.C. alone, the child was physically unharmed when he returned.
In the early evening hours of November 8th, defendant took A.C. upstairs, where she slept on a chair and defendant slept on a sofa. On the morning of November 9th, defendant decided to return the child. He drove the child to the Monmouth Mall when it opened at approximately 10:00 a.m. Defendant dropped A.C. off at the curb, told her to run to the first adults she saw and tell them the police were looking for her, and he then drove away.
Almost immediately thereafter, A.C. encountered a school teacher and her mother, who described the child as neatly dressed, clean and calm, with no signs of physical injury or emotional distress. They brought A.C. to the security office of the Mall. Mall employees also described the child as composed and not in any distress.
The police, who were called to the scene by the Mall employees, transported A.C. to the Jersey Shore Medical Center, where she was reunited with her parents, examined and found to be in good condition with no sign of physical injury or emotional distress. In her statement to an FBI agent, A.C. stated that "the man that took her treated her nicely." The parties stipulated that the child did not suffer any physical injury as a result of the kidnapping.
On November 10, 2001, a videotaped interview of A.C. was conducted by a detective of the Monmouth County Prosecutor's Office who specialized in sex crimes and children. On November 11, 2001, A.C. gave a description of defendant to State Police sketch artists for completion of a composite drawing. On November 12, 2001, Detective Coyle took A.C. to the neighborhood in Neptune City from which defendant had placed the first telephone call. When A.C. saw defendant's home, she screamed, "That's his house."
On November 12, 2001, defendant, who had contemplated suicide, drove to Sandy Hook State Park, but could not remember what happened there. At that time, defendant had not been identified as the kidnapper. He was discovered on the beach in the Park in an unconscious and unresponsive state, and was transported by ambulance to Monmouth Medical Center, where he was examined, found to be in good health, but was unable to speak. When defendant's sister arrived at the hospital, defendant wrote her a note stating that he was "the guy they're looking for for the *865 kidnapping of the little girl." At his request, defendant's sister called the police, who responded to the hospital and obtained defendant's written confession. Defendant accepted responsibility for his conduct and apologized to the child and her family.
Following the kidnapping incident, A.C. developed severe anxiety and started having nightmares. In January 2002, A.C. began therapy with Dr. Patricia Tistan, a psychologist, who diagnosed the child as suffering from a post-traumatic stress disorder, characterized by withdrawal, nightmares, anxiety, and a fear of being captured again. The child was seen by Dr. Tistan on a regular basis through June 2002, at which point Dr. Tistan noted improvement but concluded that the child could suffer a significant and long-lasting effect from the kidnapping incident.

II.
Defendant filed motions seeking dismissal of the first-degree kidnapping charge contained in count one of the indictment, contending: (1) that N.J.S.A. 2C:13-1c was unconstitutionally vague facially and as applied to the facts of this case; and (2) that the evidence presented to the grand jury had failed to demonstrate defendant's intent to harm the victim. Defendant asserted that since he had released the victim unharmed and in a safe place prior to his apprehension, his acts constituted second-degree kidnapping, not first-degree kidnapping. Defendant argued that the kidnapping statute was impermissibly vague because it failed to specify the meaning of the phrase "unharmed and in a safe place[.]" See N.J.S.A. 2C:13-1c.
The motions were argued in the Law Division. The court entered separate orders denying defendant's motions. With respect to defendant's arguments that the kidnapping statute was void for vagueness, both facially and as applied, the judge stated in pertinent part:
As applied in this circumstance, it's not void. It's not void for vagueness. Now, the Legislature, when they used the word harm as I indicated earlier, they didn't choose to use the words serious bodily injury, significant bodily injury or bodily injury. They didn't choose to modify the word harm by the words severe harm.
Although those terms are otherwise described in ... State penal statutes[,]... they intentionally chose not to do that. The Legislature intentionally rejected the recommendations of the commission, [and the] recommendations in the Model Penal Code.
* * * * * *
I am guided and I am bound by rulings of the Supreme Court. [The prosecutor] is correct ... that those cases in the Supreme Court may not have arisen precisely in concert with the issue that we have today. But the Supreme Court has, I think clearly indicated, whether it be implicitly or explicitly, that emotional harm is sufficient to satisfy the statute.
That comports with the Dictionary definition which I had read earlier. They have done that in a host of cases. In [Federico, supra, and] in [State v. Johnson, 309 N.J.Super. 237, 706 A.2d 1160 (App.Div.), certif. denied, 156 N.J. 387, 718 A.2d 1216 (1998).] ...
And I can't get away from the United State Supreme Court in the matter of [Robinson v. United States, 324 U.S. 282, 65 S.Ct. 666, 89 L.Ed. 944 (1945)] where they were dealing with a non-permanent injury, one that could resolve itself fairly quickly, determined that the statute, much the same as here, in terms of unharmed, was not void for vagueness. There is no basis for me to grant *866 the defendant's application and accordingly, I will deny it.
The motion judge also ruled that the proofs submitted to the grand jury were sufficient to permit the jurors to conclude that in confining the victim the defendant committed a purposeful act under the kidnapping statute. The judge stated that the issue of what proofs would be required or what state of mind the State must demonstrate to secure a conviction on the first-degree kidnapping charge were questions to be dealt with by the trial judge.
Thereafter, defendant filed a motion in limine, seeking a jury instruction clarifying the legal distinction between first-and second-degree kidnapping.[2] Defendant sought modification of the model jury charge on kidnapping in a manner that clarified the statutory standard for reduction of the offense to a second-degree crime.
This motion was argued in the Law Division before a different motion judge. Defense counsel contended that first-degree kidnapping required the State, in disproving unharmed release, to establish beyond a reasonable doubt that the defendant had purposely harmed or purposely left the victim in an unsafe place. Defendant argued that not releasing the victim unharmed and in a safe place prior to his apprehension were material elements of the offense of first-degree kidnapping, and are not simply "grading" provisions. Defendant asserted that, as material elements of the crime, the jury must be charged on the culpability requirement for establishing those elements beyond a reasonable doubt.
The motion judge rejected the contention that the State must prove defendant acted purposefully, or with any other level of culpability, with regard to the elements of harm and safe place, stating "[t]hat's not substantiated in our law nor in our model jury charge." The judge explained, as follows:
It's the position of the defense that these elements [of harm and safe place] are elements of the offense of kidnapping. I totally disagree....
* * * * * *
It's quite clear in the reading of the statute that the unharmed and safe place deal with the grading. It moves a first-degree kidnapping down to a second-degree. So I really don't have a problem with that, and I have reviewed again the model jury charge with regard to kidnapping, and that is not part of our law.
It is not an element of the offense. It is a grading aspect of the offense. True, the State must prove these elements beyond a reasonable doubt to the jury in order for them to find whether or not the victim was harmed or was not released in a safe place. That burden is on the State. But that deals with the grading of the offense, vis-à-vis the offense itself.
So with regard to that request to charge the jury, that request will be denied.
The motion judge also ruled that the "harm" contemplated in the unharmed release provision of the kidnapping statute, N.J.S.A. 2C:13-1c, "encompasses not only physical harm, but emotional harm." An order memorializing those rulings was entered on September 27, 2002.
Pursuant to a conditional plea agreement, defendant entered pleas of guilty on October 22, 2002 to the first-degree kidnapping *867 charge on count one, and to the second-degree endangering charge contained in count three of the indictment. The State agreed that the only harm to the victim resulting from the kidnapping was her post-traumatic stress disorder. The State agreed to seek dismissal of all other charges, and to recommend a fifteen-year term of imprisonment on the kidnapping convictionsubject to the parole disqualifier provisions of the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2and to imposition of a consecutive term of imprisonment on the endangering conviction up to ten years, as determined by the court.[3]
The parties agreed that defendant would be permitted to appeal the denial of his pre-trial motions pursuant to Rule 3:9-3(f). The plea agreement provided that if defendant was successful on appeal, he would be permitted to substitute a plea of guilty to second-degree kidnapping, with new negotiations concerning appropriate sentencing recommendations. The trial court accepted defendant's guilty pleas, conditioned upon his right to appeal from the denial of his pre-trial motions.
On March 26, 2003, after hearing the testimony of A.C.'s mother on the issue of the extent of harm suffered by the child and several impact statements, the judge sentenced defendant to a fifteen-year term of imprisonment on the first-degree kidnapping conviction, in accordance with the plea agreement, and to a consecutive seven-year term of imprisonment on the child-endangerment conviction. Pursuant to NERA, the judgment of conviction also required that defendant serve eighty-five percent of the term imposed on the first-degree kidnapping conviction. Applicable mandatory fines and penalties were also imposed.

III.
Defendant contends that A.C.'s post-traumatic stress disorder did not constitute "harm" under N.J.S.A. 2C:13-1c, arguing that some emotional or psychological injury is inherent in every kidnapping. Defendant asserted that if emotional or psychological injury is deemed sufficient to constitute the "harm" required to render the kidnapping a first-degree crime, then "virtually every kidnapping would be one of the first degree."
Defendant also contends that the trial court should have modified the model jury charge to reflect that the "harm" or "unsafe place" provisions in N.J.S.A. 2C:13-1c are elements of the offense of first-degree kidnapping and require a finding by the jury that the State has proven beyond a reasonable doubt that defendant had purposely caused such harm to the victim or had purposely released the victim in an unsafe place. Defendant further argues that the unharmed release provisions contained in N.J.S.A. 2C:13-1c are facially void for vagueness for failure to define "harm" and "safe place," and are void for vagueness as applied by the trial court.
We begin our analysis of these arguments with a discussion of the kidnapping statute, N.J.S.A. 2C:13-1, which provides in pertinent part:
a. Holding for ransom, reward or as a hostage. A person is guilty of kidnapping if he unlawfully removes another from the place where he is found or if he unlawfully confines another with the purpose of holding that person for ransom or reward or as a shield or hostage.

*868 b. Holding for other purposes. A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or in a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period of time, with any of the following purposes:
(1) To facilitate commission of any crime or flight thereafter;
(2) To inflict bodily injury on or to terrorize the victim or another;
(3) To interfere with the performance of any governmental or political function; or
(4) To permanently deprive a parent, guardian or other lawful custodian of custody of the victim.
c. Grading of kidnapping.
(1) Except as provided in paragraph (2) of this subsection, kidnapping is a crime of the first degree and upon conviction thereof, a person may, notwithstanding the provisions of paragraph (1) of subsection a. of N.J.S. 2C:43-6, be sentenced to an ordinary term of imprisonment between 15 and 30 years. If the actor releases the victim unharmed and in a safe place prior to apprehension, it is a crime of the second degree.

(2) Kidnapping is a crime of the first degree and upon conviction thereof, an actor shall be sentenced to a term of imprisonment by the court, if the victim of the kidnapping is less than 16 years of age and if during the kidnapping:
(a) A crime under N.J.S. 2C:14-2 or subsection a. of N.J.S. 2C:14-3 is committed against the victim;
(b) A crime under subsection b. of N.J.S. 2C:24-4 is committed against the victim; or
(c) The actor sells or delivers the victim to another person for pecuniary gain other than in circumstances which lead to the return of the victim to a parent, guardian or other person responsible for the general supervision of the victim.
Notwithstanding the provisions of paragraph (1) of subsection a. of N.J.S. 2C:43-6, the term of imprisonment imposed under this paragraph shall be either a term of 25 years during which the actor shall not be eligible for parole, or a specific term between 25 years and life imprisonment, of which the actor shall serve 25 years before being eligible for parole, provided, however, that the crime of kidnapping under this paragraph and underlying aggravating crimes listed in subparagraph (a), (b) or (c) of this paragraph shall merge for purposes of sentencing. If the actor is convicted of the criminal homicide of a victim of a kidnapping under the provisions of chapter 11, any sentence imposed under the provisions of this paragraph shall be served consecutively to any sentence imposed pursuant to the provisions of chapter 11.
* * * * * *

[Emphasis added.]
Unless the provisions of N.J.S.A. 2C:13-1c(2) are applicable, the usual term of imprisonment for a first-degree kidnapping offense is between fifteen and thirty years. N.J.S.A. 2C:13-1c(1). For a second-degree crime it is between five and ten years. N.J.S.A. 2C:43-6a(2). A court imposing a sentence of imprisonment for the crime of first-degree or second-degree kidnapping shall fix a minimum term of 85% of the sentence imposed under NERA, during which the defendant shall not be eligible for parole. See N.J.S.A. 2C:43-7.2d(6). Additionally, the court must impose a five-year *869 term of parole supervision when the defendant is sentenced for a crime of the first degree and to a three-year term of parole supervision if the defendant is convicted of a second-degree crime. N.J.S.A. 2C:43-7.2c.
In order to convict for first-degree kidnapping, the State must prove beyond a reasonable doubt that, prior to his or her apprehension, either the defendant failed to release the victim unharmed or did not release the victim in a safe place. Federico, supra, 103 N.J. at 174, 510 A.2d 1147; Johnson, supra, 309 N.J.Super. at 265, 706 A.2d 1160; State v. Smith, 279 N.J.Super. 131, 140-41, 652 A.2d 241 (App.Div.1995). Stated another way, the State bears the burden of disproving unharmed release. Federico, supra, 103 N.J. at 176, 510 A.2d 1147. The Federico Court also concluded that proving beyond a reasonable doubt either that the defendant did not release the victim unharmed, or did not release the victim in a safe place prior to his apprehension, is an element of the offense of first-degree kidnapping. Id. at 174-76, 510 A.2d 1147.
It must also be noted the United States Supreme Court has held that, in both federal and state criminal prosecutions, due process requires that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 476, 120 S.Ct. 2348, 2355, 147 L.Ed.2d 435, 446 (2000). See also Jones v. United States, 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 1224 n. 6, 143 L.Ed.2d 311, 326 n. 6 (1999) (noting that the constitutional safeguards that mandate that principle "concern not the identity of the elements defining criminal liability but only the required procedures for finding the facts that determine the maximum permissible punishment; these are the safeguards going to the formality of notice, the identity of the factfinder, and the burden of proof").
Recently, in Casilla, supra, 362 N.J.Super. at 566-67, 829 A.2d 1095, we emphasized that a guilty verdict for first-degree kidnapping cannot stand if the trial court fails to instruct the jury on the State's burden of disproving unharmed release, stating:

N.J.S.A. 2C:13-1c(1) provides in pertinent part that "kidnapping is a crime of the first degree ... [but i]f the actor releases the victim unharmed and in a safe place prior to apprehension, it is a crime of the second degree." Under this provision, to prove first-degree kidnapping the State not only has to establish the elements of kidnapping set forth in N.J.S.A. 2C:13-1a or b but also "prove beyond a reasonable doubt either that the victim was harmed or not released in a safe place prior to apprehension."

[Quoting Federico, supra, 103 N.J. at 174, 510 A.2d 1147.]
In Casilla, supra, we concluded that the trial court had erred by instructing "the jury that kidnapping has only two elementsone, unlawful removal of the victim from the place where he was found or unlawful confinement of the victim for a substantial period of time, and two, that the removal or confinement was with the purpose of holding the victim for ransom or reward and/or to inflict bodily injury upon him and/or terrorize him or another."[4] 362 N.J.Super. at 567, 829 A.2d 1095.
*870 Here, the plea agreement states that "[t]he factual basis for the plea [was] the trial court's ruling that any emotional and psychological harm to the victim would suffice to constitute `harm' for the purposes of the first degree statute." (Emphasis added). Defendant argues that the term "harm" does not include "minimal" emotional or psychological harm because such harm is inherent in every kidnapping. Here, however, defendant's argument presupposes that A.C. did not suffer substantial emotional and psychological injury. The overwhelming evidence in the record is to the contrary. A.C. has undergone therapy and has been diagnosed as suffering from a post-traumatic stress disorder, characterized by anxiety, nightmares and fear. Moreover, neither motion judge stated that a minimal amount of harm was sufficient; rather, they ruled that the term "harm," as used in N.J.S.A. 2C:13-1c, encompassed not only physical harm, but emotional harm as well.
The motion judges correctly noted that in enacting N.J.S.A. 2C:13-1c, the Legislature did not define "harm" to include only bodily injury. In State v. Tronchin, 223 N.J.Super. 586, 594, 539 A.2d 330 (App. Div.1988), we concluded that the evidence of kidnapping was insufficient under circumstances where the victim had initially agreed to go with the defendant in his car, but he later sexually assaulted her. However, in tacitly recognizing that emotional injury may constitute "harm," we "reject[ed] any contention that [the victim] suffered neither physical nor emotional injury, and thus was released unharmed." Id. at 594 n. 4, 539 A.2d 330.
In People v. Nguyen, 22 Cal.4th 872, 95 Cal.Rptr.2d 178, 997 P.2d 493, 501 (2000), the California Supreme Court considered whether the risk of harm required to elevate the offense of kidnapping to commit robbery to aggravated kidnapping included psychological harm. The Court found it significant that the Legislature had used the term "harm" instead of "bodily harm," which it had used in another section of the kidnapping statute, and concluded that "the legislature intended to target coerced movement resulting in an increased risk either of grave physical injury or of mental terror." Ibid.
In other criminal contexts, our courts have held that the term "harm" is not limited to physical harm. See State v. Kromphold, 162 N.J. 345, 357, 744 A.2d 640 (2000) (psychological harm is relevant in determining the "gravity and seriousness of harm inflicted on the victim," an aggravating factor in sentencing under N.J.S.A. 2C:44-1a(2)); and State v. M.L., 253 N.J.Super. 13, 21, 600 A.2d 1211 (App. Div.1991) (ruling that "a demonstration of actual physical harm" is not necessary for a conviction of child endangerment under N.J.S.A. 2C:24-4a, which prohibits a caretaker from causing a "child harm that would make the child an abused or neglected child"), certif. denied, 127 N.J. 560, 606 A.2d 371 (1992).
In Robinson, supra, 324 U.S. at 283, 65 S.Ct. at 667, 89 L.Ed. at 945, the United States Supreme Court interpreted the Federal Kidnapping Act, which provided at that time that the death sentence would not be imposed if the victim "has been liberated unharmed." The Court rejected the defendant's argument that permanent injury to the victim was a prerequisite to the death sentence, stating "[w]e find no justification whatever for grafting the word permanent onto the language which Congress adopted." 324 U.S. at 285, 65 S.Ct. at 668, 89 L.Ed. at 947. As in Robinson, we find no justification here for limiting the word "harm" to bodily harm when interpreting N.J.S.A. 2C:13-1c.
"[W]here the Legislature has carefully employed a term in one place and *871 excluded it in another, it shall not be implied where excluded." GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 308, 625 A.2d 468 (1993). Numerous sections of the Code of Criminal Justice utilize the terms "serious bodily injury," see, e.g., N.J.S.A. 2C:11-1; N.J.S.A. 2C:11-3; N.J.S.A. 2C:12-1; N.J.S.A 2C:13-2; N.J.S.A. 2C:15-1b; N.J.S.A. 2C:17-2, or "bodily injury," see, e.g., N.J.S.A. 2C:11-1a; N.J.S.A. 2C:12-10b; N.J.S.A. 2C:13-5; N.J.S.A. 2C:15-1a; and N.J.S.A. 2C:17-3. Moreover, N.J.S.A. 2C:1-2c provides that the provisions of the Code of Criminal Justice "shall be construed according to the fair import of their terms." It is clear that the Legislature did not intend that the term "unharmed," as used in N.J.S.A. 2C:13-1c, be interpreted to mean only that the victim suffered no bodily injury or no serious bodily injury.
Defendant asserts that the Legislature intended "to restrict the application of the extreme kidnapping penalties to only the most heinous of cases." Defendant cites to the Final Report of the New Jersey Criminal Law Revision Commission (Final Report), Vol. II, Comment 7 on N.J.S.A. 2C:13-1, at 187 (1971), which states:
[T]he main justification for treating kidnapping as seriously as murder or aggravated rape is the likelihood of a victim disappearing permanently during a kidnapping, without possibility of proving murder. Accordingly, we propose to maximize the kidnapper's incentive to return the victim alive, by making first degree penalties apply only when the victim is not "released alive in a safe place."

[Quoting, Model Penal Code Tentative Draft 11 at 19-20 (1960).]
The Model Penal Code Tentative Draft described two lesser degrees of kidnapping, one when the victim is released with substantial injuries and the other when the victim is released unharmed or with minor harm. Ibid. The Model Penal Code Tentative Draft stated, in pertinent part:
Certainly those formulations which authorize extreme penalties unless the victim is `liberated unharmed' are unsatisfactory... because they require that no harm whatever shall have been done to the victim, and because they refer to the moment of liberation without regard to the circumstances, which may be such as to make serious harm or death quite likely.

[Ibid.]
The Criminal Law Revision Commission adopted this commentary but did not follow it, a situation which defendant describes as "nonsensical." Instead of rejecting the "liberated unharmed" provision suggested by the Model Penal Code Tentative Draft, and grading kidnappings according to the amount of harm inflicted, the Commission proposed N.J.S.A. 2C:13-1c, as adopted, providing that kidnapping is a crime of the first degree "unless the actor voluntarily releases the victim unharmed and in a safe place prior to apprehension." Final Report, supra, Vol. I, at 57. In contrast, the Model Penal Code, § 212.1(d) provides:
Kidnapping is a felony of the first degree unless the actor voluntarily releases the victim alive and in a safe place prior to trial, in which case it is a felony of the second degree.

[Emphasis added.]
The choice of the Commission and the Legislature to use the term "unharmed," directly contrary to the Commission's own Final Report commentary rejecting this term, does not support defendant's argument that the legislative intent of the released unharmed provision contained in N.J.S.A. 2C:13-1c was to act as a deterrent. The Final Report, Vol. II, quoting *872 the Model Penal Code Tentative Draft, explained that downgrading the offense if the actor released the victim alive but injured would provide the actor with an incentive to release the victim instead of killing her.
However, by choosing to downgrade the offense only if the victim is released "unharmed," our Legislature has determined that the incentive to release the victim is not as important as upgrading the offense of kidnapping in most cases. In Robinson, supra, the Court rejected the deterrence argument, refusing to "expand the meaning of the statute" in order to "magnify" the kidnapper's inducement to release the victim. 324 U.S. at 284-85, 65 S.Ct. at 668, 89 L.Ed. at 946. In State v. Masino, 94 N.J. 436, 446, 466 A.2d 955 (1983), the Court noted the discrepancy between the Commission's commentary and the statute that had been adopted and explained that "[i]t is evident that the legislature intended harsh treatment for kidnappers." We conclude that the intended breadth of the deterrence incentive is limited. It is not for us to modify the statute by adopting the incentive or deterrence concepts set forth in the Final Report or in the Model Penal Code.
We recognize that the Court, in Federico, supra, 103 N.J. at 175, 510 A.2d 1147, announced "concern about the potential for abusive prosecutions for first degree kidnapping." The Court explained, as follows:
The thirty-year maximum sentence for first degree kidnapping, exceeded only by the maximum punishment for murder, is warranted where the circumstances make the incident "specially terrifying and dangerous."
[Quoting Final Report, supra, Vol. II, at 182-83.]
Although defendant's abduction and treatment of A.C. was not especially terrifying or dangerous, as a young child, she was particularly vulnerable, and the emotional harm that she sustained was substantial. The Court in Federico, supra, was only considering the State's burden to disprove unharmed release as an element of first-degree kidnapping, 103 N.J. at 176, 510 A.2d 1147, not whether a released victim's psychological or emotional harm would be sufficient to disprove unharmed release.
Defendant also relies on People v. Schoenfeld, 111 Cal.App.3d 671, 168 Cal.Rptr. 762, 764-66 (1981), in which the defendants kidnapped a school bus full of children and, after a trip of nearly twelve hours in two crowded vans without food, water or restroom stops, imprisoned them in a buried furniture van, from which they managed to escape. The California penal code provided for life imprisonment without parole for kidnapping if the victim "suffers bodily harm." Id. at 768.
Some of the children suffered "minor cuts and bruises" and "insubstantial transient injuries," id. at 766, but the court held that their injuries were not sufficiently substantial or serious to qualify as bodily harm under the statute. Id. at 770. The court explained that the imposition of the greater penalty when the victim suffers injuries that are "almost necessarily an incident to every forcible kidnapping" would not serve the purpose of either penalty-enhancement for "the more heinous crime" or deterrence. Id. at 769. The court reasoned that if the minor bodily injury inherent in most kidnappings warranted the more severe penalty, the kidnapper might be motivated to kill the victim to avoid identification. Ibid. Although that reasoning is persuasive, it does not justify changing the wording of N.J.S.A. 2C:13-1c to require the absence of emotional as well as physical harm to the victim for the kidnapping to be a second-degree *873 offense. See Robinson, supra, 324 U.S. at 285, 65 S.Ct. at 668, 89 L.Ed. at 946. In Schoenfeld, the court explained:
[A]ll kidnappings involve some degree of suffering insofar as mental distress or emotional harm is relatively manifested. If, as the People contend, such evidence alone ... is sufficient, then conceptually every forcible restraint would be automatically subject to the augmented penalty without the essential showing of substantial bodily injury.

[168 Cal.Rptr. at 772.]
Here, however, the statutory test is different. N.J.S.A. 2C:13-1c requires that the victim be released unharmed, whereas the California penal code required that the victim be released without bodily harm. As a concurring justice in Schoenfeld stated, "[i]f the Legislature had intended us to consider emotional distress and psychic damage in determining whether bodily harm occurred, it couldit can and possibly shouldsay so. So far, it has not." 168 Cal.Rptr. at 774. Our Legislature has used the broader term "unharmed" without any limitation to bodily harm. The court in Nguyen, supra, 95 Cal.Rptr.2d 178, 997 P.2d at 498, noted that the statutory provision interpreted in Schoenfeld required "bodily harm," whereas the statute it was considering required "risk of harm."
In summary, we find no error in the trial court's conclusion that "released unharmed" under N.J.S.A. 2C:13-1c encompasses emotional and psychological harm.
IV.
Defendant also argues that the trial court's interpretation of N.J.S.A. 2C:13-1c to include emotional harm renders it void for vagueness. We disagree.
"Clear and comprehensible legislation is a fundamental prerequisite of due process of law, especially where criminal responsibility is involved.... Vague laws deprive citizens of adequate notice of proscribed conduct, and fail to provide officials with guidelines sufficient to prevent arbitrary and erratic enforcement." State v. Afanador, 134 N.J. 162, 170, 631 A.2d 946 (1993). The test for vagueness of a criminal act is whether people "of common intelligence must necessarily guess at its meaning and differ as to its application." State v. Mortimer, 135 N.J. 517, 532, 641 A.2d 257 (1994) (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926)), cert. denied, 513 U.S. 970, 115 S.Ct. 440, 130 L.Ed.2d 351 (1994). Accordingly, one of the "general purposes of the provisions governing the definition of offenses" is to "give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction." N.J.S.A. 2C:1-2a(4).
A statute is vague on its face if "there is no conduct that it proscribes with sufficient certainty." State v. Cameron, 100 N.J. 586, 593, 498 A.2d 1217 (1985). A statute is vague as applied if it "does not with sufficient clarity prohibit the conduct against which it sought to be enforced." Ibid. Defendant contends that N.J.S.A. 2C:13-1c is void both facially and as applied.
Defendant relies on the dissent of Justice Rutledge in Robinson, supra, 324 U.S. at 286-93, 65 S.Ct. at 669-72, 89 L.Ed. at 947-51, concluding that the word "unharmed" was not clear. Justice Rutledge questioned "[h]ow much injury, and what kind, did Congress have in mind?" 324 U.S. at 288, 65 S.Ct. at 669, 89 L.Ed. at 948. He considered that a kidnapper might hold the victim until an injury heals, in which case the kidnapper would be rewarded "for prolonging the agony." Ibid. Justice Rutledge accepted the petitioner's interpretation to avoid these problems, *874 stating "[i]f the single and vague word `unharmed' is construed to mean absence of permanent injury or grave injury, though not permanent, [the kidnapper] would have the hope, the inducement that surrender might give escape from the maximum sentence." 324 U.S. at 291, 65 S.Ct. at 671, 89 L.Ed. at 950. According to Justice Rutledge, any other interpretation would have made the imposition of the death penalty depend on fortuitous circumstances, or would have induced the kidnapper to kill the victim. Ibid.
However, the majority in Robinson declined to invalidate the kidnapping statute "on the ground that there is uncertainty as to the precise meaning and scope of the word `unharmed.'" 324 U.S. at 285-86, 65 S.Ct. at 668, 89 L.Ed. at 947. The Court explained that, despite the uncertainties that "lurk" in most words and phrases, Congress intended to allow the death penalty
under certain circumstances, for kidnappers who harm their victims. And we cannot doubt that a kidnapper who violently struck the head of his victim with an iron bar, as evidence showed that this petitioner did, comes within the group Congress had in mind.

[324 U.S. at 286, 65 S.Ct. at 668-69, 89 L.Ed. at 947.]
We took the same approach in M.L., supra, 253 N.J.Super. at 29-31, 600 A.2d 1211, focusing on whether the allegedly vague prohibition covered the defendant's conduct, rather than possible actions that had not occurred. We held that, regardless of whether other acts of child neglect were criminal under N.J.S.A. 2C:24-4a, the defendant had left her fifteen-month-old child home alone for four hours, thereby putting her at risk and satisfying the definition of "harm" in the statute. Id. at 30-31, 600 A.2d 1211. See State v. Roth, 289 N.J.Super. 152, 162-63, 673 A.2d 285 (App.Div.) (rejecting a vagueness challenge to the term "materially harm" in the theft-by-extortion statute, N.J.S.A. 2C:20-5), certif. denied, 146 N.J. 68, 679 A.2d 655 (1996).
The "released unharmed" requirement of N.J.S.A. 2C:13-1c does not proscribe any specific conduct of the defendant. The same actions constituting kidnapping might harm one victim but not another. However, the Legislature in its discretion chose to upgrade the offense, thereby increasing punishment, on the basis of harm to the victim. As the State points out, it is appropriate to relate the punishment to the degree of harm that the victim suffers. State v. DiFrisco, 142 N.J. 148, 160-61, 662 A.2d 442 (1995), cert. denied, 516 U.S. 1129, 116 S.Ct. 949, 133 L.Ed.2d 873 (1996).
Here, A.C. suffered severe anxiety, nightmares, and an inability to socialize; she worried that she would be "captured" again. Like the victim in Robinson supra, who was struck on the head with an iron bar, 324 U.S. at 286, 65 S.Ct. at 668-69, 89 L.Ed. at 947, and like the baby in M.L. supra, who was left alone, 253 N.J.Super. at 30-31, 600 A.2d 1211, A.C. was also harmed, despite the delayed manifestation of her symptoms. The meaning of the term "unharmed" in N.J.S.A. 2C:13-1c is sufficiently certain and clear, and its use "would not send the average citizen scrambling for a dictionary." Afanador, supra, 134 N.J. at 171, 631 A.2d 946.

V.
Defendant contends that the trial court erred in denying his motion to dismiss the count of the indictment charging him with first-degree kidnapping on the ground that there was no evidence submitted to the grand jury that defendant had intended to harm A.C. He also argues that the court erred in denying his motion to *875 charge the jury that, for a conviction for first degree kidnapping, the State was required to prove beyond a reasonable doubt that defendant intended to harm A.C.
Defendant reasons that since the released unharmed provision is a material element of the offense of first-degree kidnapping, it is thus subject to a culpability requirement. The State counters that the harm to the victim under N.J.S.A. 2C:13-1c is not an element of the offense of kidnapping, but pertains only to the grading of the offense, and thus culpability is not required.
In denying the motion to dismiss the first-degree kidnapping charge, the motion judge found that the proofs submitted to the grand jury and the instructions given were "more than sufficient." The judge declined to determine "what mind set the State must demonstrate in order to secure a conviction," leaving that issue for the trial judge. We find no error in that conclusion.
As we have noted, following that denial the defendant moved for an order amending the model jury charge to reflect the released unharmed provisions contained in N.J.S.A. 2C:13-1c as elements of the offense of first-degree kidnapping. In denying that motion, the trial court concluded that "the unharmed and safe place" provisions of the statute were "a grading aspect of the offense" and were not "an element of the offense."
We conclude that the released unharmed provision of N.J.S.A. 2C:13-1c is an element of kidnapping, despite its location in a separate subsection entitled "Grading of kidnapping." An "element of an offense" means, in pertinent part,
(1) such conduct or (2) such attendant circumstances or (3) such a result of action as
(a) Is included in the description of the forbidden conduct in the definition of the offense;
* * * * * *

[N.J.S.A. 2C:1-14h.]
In Federico, supra, 103 N.J. at 174-76, 510 A.2d 1147, the Court clearly concluded that disproving unharmed release was an element of the crime of first-degree kidnapping, stating:
With respect to kidnapping, failing to release the victim constitutes forbidden conduct, N.J.S.A. 2C:1-14(h)(1)(a), or represents an attendant circumstance, N.J.S.A. 2C:1-14(h)(2)(a), that elevates the crime to one of the first degree.
* * * * * *
In assaying the effect of the trial court's failure to charge the jury that the State has the burden of proving unharmed release, we recognize that the failure to charge the jury on an element of an offense is presumed to be prejudicial error, even in the absence of a request by defense counsel.

[Emphasis added (citations omitted).]
See also Casilla, supra, 362 N.J.Super. at 567, 829 A.2d 1095 (kidnapping conviction reversed where trial court instructed the jury, in accordance with the Model Charge, that the offense of kidnapping had only two elements). Cf. State v. Smith, 279 N.J.Super. 131, 138-42, 652 A.2d 241 (App.Div.1995) (the provisions of N.J.S.A. 2C:13-1c(2), upgrading kidnapping if the victim is under sixteen and the actor commits one of enumerated offenses during the kidnapping, are elements of the offense which must be submitted to the jury).
We also conclude that the released-unharmed provision is a "material element" of the offense of first-degree kidnapping. "`Material element of an offense' means an element that does not relate exclusively to the statute of limitations, jurisdiction, venue *876 or to any other matter similarly unconnected with (1) the harm or evil, incident to the conduct, sought to be prevented by law defining the offense...." N.J.S.A. 2C:1-14i.
The release of a victim unharmed and in a safe place is connected to the harm or evil that N.J.S.A. 2C:13-1 seeks to prevent: death or injury to kidnapping victims. Federico, supra, 103 N.J. at 175, 510 A.2d 1147; Final Report, supra, Vol. II at 187.
Therefore, culpability is required for this material element of the offense. Indeed, "material element" is defined in order to determine whether "the mental state for the offense must apply." Cannel, New Jersey Criminal Code Annotated, comment 3 on N.J.S.A. 2C:1-14 (2003).
Moreover, "[e]xcept as provided in subsection c.(3) of this section, a person is not guilty of an offense unless he acted purposely, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense." N.J.S.A. 2C:2-2a (emphasis added). Therefore, culpability is required in disproving the material element of unharmed release.
N.J.S.A. 2C:2-2c(3), entitled "Construction of statutes not stating culpability requirement," provides:
Although no culpable mental state is expressly designated in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime with the culpability defined in paragraph b.(2) of this section [knowingly]. This provision applies to offenses defined both within and outside of this code.
Here, the released unharmed provision contained in N.J.S.A. 2C:13-1c does not necessarily proscribe any specific conduct, but it is nevertheless a material element of the offense as either forbidden conduct or an attendant circumstance under N.J.S.A. 2C:1-14h and -14i. See Federico, supra, 103 N.J. at 174, 510 A.2d 1147. Contrary to the State's argument that defendant desires to rewrite the statute favorably to him, it is reasonable to impose a culpability requirement because the definitions of the different degrees of culpability cover attendant circumstances as well as the actor's actual conduct. See N.J.S.A. 2C:2-2b. We conclude that a culpable state of mind is required in disproving the released unharmed element of first-degree kidnapping, and the jury must be so instructed.
In interpreting N.J.S.A. 2C:13-1c, we find no basis for imposition of a strict liability standard as urged by the State. The Legislature may impose strict liability for crimes, regardless of the defendant's culpability or state of mind, as it did, for example, in the Comprehensive Drug Reform Act, N.J.S.A. 2C:36-9a, specifying that the actor is "strictly liable for a death which results" from taking the controlled dangerous substance that the actor manufactured, distributed or dispensed. State v. Maldonado, 137 N.J. 536, 547-56, 645 A.2d 1165 (1994).
However, strict liability is disfavored. See Final Report, supra, Vol. II, comment 9 on N.J.S.A. 2C:2-2, at 47 ("[I]n the absence of minimal culpability, the law has neither a deterrent nor corrective nor an incapacitative function to perform"). N.J.S.A. 2C:13-1 contains no legislative intent supporting imposition of strict liability for any element of first-degree kidnapping. Thus, in accordance with N.J.S.A. 2C:2-2a *877 and N.J.S.A. 2C:2-2c(3), there must be some culpability requirement for the released unharmed element of the offense of first-degree kidnapping.
Defendant argues that the required state of mind is "purposely," because the actor must have "the purpose of holding [the victim] for ransom or reward or as a shield or hostage." N.J.S.A. 2C:13-1a. In support of his position, defendant cites to N.J.S.A. 2C:2-2c(1), entitled "Prescribed culpability requirement applies to all material elements[,]" which provides:
When the law defining an offense prescribes the kind of culpability that is sufficient for the commission of an offense, without distinguishing among the material elements thereof, such provision shall apply to all of the material elements of the offense, unless a contrary purpose plainly appears.
However, N.J.S.A. 2C:13-1 distinguishes among the material elements of the offense regarding culpability. It requires a purpose to hold the victim for ransom, but it is silent regarding the degree of culpability required for the other elements of the offense. We conclude that the default mental state of "knowingly" should thus apply, as prescribed by N.J.S.A. 2C:2-2c(3).
The State argues that the Legislature has contemplated situations in which the grading of an offense does not depend on culpability, citing to N.J.S.A. 2C:2-2e, entitled "Culpability as determinant of grade of offense," which provides
When the grade or degree of an offense depends on whether the offense is committed purposely, knowingly, recklessly or criminally negligently, its grade or degree shall be the lowest for which the determinative kind of culpability is established with respect to any material element of the offense.
The State also relies on State v. Dixon, 346 N.J.Super. 126, 132-36, 787 A.2d 211 (App.Div.), certif. denied, 172 N.J. 181, 796 A.2d 898 (2002), in which we declined to engraft a culpability requirement onto the clause in N.J.S.A. 2C:29-2b that increases the grade of eluding a police officer "if the flight or attempt to elude creates a risk of death or injury to any person." We acknowledged the default culpability requirement under N.J.S.A. 2C:2-2c(3) when the Code is silent, and further recognized the requirement that the State prove the "risk of death or injury" beyond a reasonable doubt, whether it was "considered a sentence enhancer or element of the second degree crime." Id. at 136, 787 A.2d 211. Nevertheless, we relied on the absence of a culpability requirement for this factor in the eluding statute. Id. at 135-36, 787 A.2d 211.
However, unlike the grading factor for eluding a police officer in Dixon, it is established that the grading factor for first-degree kidnapping is also an element of the offense. See Federico, supra, 103 N.J. at 174, 510 A.2d 1147. As a material element, culpability is required under N.J.S.A. 2C:2-2a and -2c(3).
The State also cites to State v. Torres, 236 N.J.Super. 6, 7, 563 A.2d 1141 (App. Div.1989), certif. denied, 122 N.J. 153, 584 A.2d 222 (1990), where we held that the State need not prove that the defendant had knowledge of the quantity of the drug that he possessed to sustain a conviction for first-degree possession with intent to distribute under N.J.S.A. 2C:35-5, which requires knowing or purposeful possession but contains no culpability requirement regarding the amount on which grading of the offense depends. We ruled that quantity was not an element of the offense. Id. at 13, 563A.2d 1141.
However, the Supreme Court has held that "the weight of the controlled *878 dangerous substance is a material element of the crime of first degree possession with intent to distribute under N.J.S.A. 2C:35-5b(1)," without addressing whether the defendant must have knowledge of the amount possessed. State v. Florez, 134 N.J. 570, 595, 636 A.2d 1040 (1994). Subsequently, and without extended discussion, we again ruled that the State need not prove that the defendant knew the quantity of the drug that he possessed for a conviction for first degree possession. State v. Moore, 304 N.J.Super. 135, 145-46, 698 A.2d 1259 (App.Div.1997). We noted that Florez had not considered the defendant's knowledge. Id. at 145-46, 698 A.2d 1259. In Moore, we did not address the minimum requirement of culpability set forth in N.J.S.A. 2C:2-2a.
Here, however, since disproving unharmed release is a material element of the offense of first-degree kidnapping, imposition of a culpability requirement is required because these circumstances or this conduct, and the legislative purpose of preventing harm to a victim, are more substantial than the amount of a drug that a defendant possessed, and the condition and location of the victim are more closely related to the harm or evil prevented by upgrading kidnapping than the amount of a drug possessed is related to the harm or evil prevented by upgrading possession of controlled dangerous substances. See N.J.S.A. 2C:1-14i.
Moreover, a culpability requirement for releasing a victim harmed would have the beneficial effect of precluding the upgrading of a kidnapping when the actor had not caused the victim's harm. In contrast, a culpability requirement for the amount of a controlled dangerous substance would be extremely difficult to prove in many cases and would thus have the detrimental effect of frequently precluding the upgrading of the offense.
In summary, we conclude that the released unharmed provision of N.J.S.A. 2C:13-1c is a material element of the offense of first-degree kidnapping and is thus subject to a culpability requirement of "knowingly" set forth in N.J.S.A. 2C:2-2b(2), and the jury must be so instructed. The trial court erred in denying defendant's motion seeking modification of the model jury charge to reflect that requirement. We need not consider the issue of whether the first-degree kidnapping count of the indictment must be dismissed on this basis, or, if not, how the jury should be charged, because the parties agreed that, in the event of a remand, defendant will be permitted to enter a guilty plea to second degree kidnapping.
However, our review of the model jury charges on kidnapping indicates they do not properly reflect that disproving unharmed release are elements of the offense of first-degree kidnapping, nor that the State must establish the requisite degree of culpability. See Model Jury Charge (Criminal), Kidnapping (N.J.S.A. 2C:13-1a); Kidnapping (N.J.S.A. 2C:13-1b); and Kidnapping (Victim Under 16)(N.J.S.A. 2C:13-1c). Accordingly, we refer the issue of revision of these model jury charges to the Supreme Court and the request the Court consider referring it to its Criminal Practice Committee for review.

VI.
Defendant contests the seven-year sentence imposed on the child endangerment conviction and the sentencing procedure, contending that the sentencing judge (1) improperly accepted a community impact statement, (2) erred refusing to recuse himself because he lived in the community where the kidnapping had occurred, and (3) failed to properly determine and consider the aggravating and mitigating factors.
*879 A. The Community Impact Statement.
Defense counsel objected to the community impact statement offered by the State because: (1) there was no legal authority for its introduction; (2) the sentencing judge had resided in Spring Lake for forty-eight years and thus himself "would be a victim of this crime;" and (3) it pertained only to the kidnapping conviction, and was irrelevant to the child endangerment conviction. The judge admitted the statement over defendant's objection, stating he was "of the opinion that this particular offense affects everyone in the State of New Jersey, not only in the Town of Spring Lake." Spring Lake Police Chief Robert Dawson read the community impact statement during the sentencing proceeding. He noted that the kidnapping instigated "a statewide manhunt" involving hundreds of federal, state, county and local detectives and attracted extensive media coverage. Chief Dawson said that the community had become cautious and described new child-safety programs and efforts that had been implemented. He concluded by stating that defendant "not only removed the innocence and freedom enjoyed by an unsuspecting six year old girl, but those of an entire community."
After considering the issue, the judge then agreed with defendant's position that the statement was "of no moment" because it pertained only to the kidnapping conviction, stating that the Chief's statement "will have no impact on the sentence [for kidnapping] because it's already been agreed upon." Because the judge did not consider the statement in deciding the sentence for child endangerment, which is the only sentence to which defendant objects, any error in admitting the statement was clearly incapable of producing an unjust result and was thus harmless. See Rule 2:10-2.
B. The Refusal of the Judge to Recuse Himself.
The judge declined to recuse himself as a member of the community and therefore as a victim of the crime, stating: "If I followed that thought then I would have to recuse myself from every criminal case that occurs in the State of New Jersey." Defendant cites to Rule 1:12-1(e) and (f), which mandate disqualification of a judge if the judge "is interested in the event of the action" or "when there is any other reason which might preclude a fair and unbiased hearing and judgment, or which might reasonably lead counsel or the parties to believe so." A party may move to disqualify a judge pursuant to Rule 1:12-2.
Because the judge did not consider the community impact statement, his status as a resident of the community could not have had any effect on his sentencing decision. Moreover, as the State correctly notes, a judge's residence in a community does not automatically disqualify that judge from hearing matters that occurred in that community. In Homann v. Torchinsky, 296 N.J.Super. 326, 338-40, 686 A.2d 1226 (App.Div.), certif. denied, 149 N.J. 141, 693 A.2d 110 (1997), we held that it was unnecessary for a judge to recuse himself simply because he lived in the same town, because he did live in the same development in which he was enforcing a restrictive covenant in a deed that covered the development. We stressed that there was no evidence that the judge was prejudiced or that the restrictive covenant applied to his property. Id. at 340, 686 A.2d 1226.
As in Homann, here, there is no evidence in the record that the judge was prejudiced, unfair or interested in the action. Any belief of defendant that the judge was biased or unfair was not objectively reasonable. Accordingly, we conclude *880 that the judge did not abuse his discretion by refusing to disqualify himself. State v. Marshall, 148 N.J. 89, 275-76, 690 A.2d 1 (1997) (declining to disqualify a trial judge in the absence of a showing of prejudice or potential bias), cert. denied, 522 U.S. 850, 118 S.Ct. 140, 139 L.Ed.2d 88 (1997).
C. Aggravating and Mitigating Factors.
In sentencing defendant on the second-degree endangering conviction, the judge found, as aggravating factors, a "risk that the defendant will commit another offense" and a "need for deterring the defendant and others from violating the law." N.J.S.A. 2C:44-1a(3) and -1a(9). Regarding the risk of committing another offense, the judge stated in pertinent part:
[T]his was a carefully laid out plan by this defendant.... [H]e had a couple of dry runs prior to this particular incident with regard to other children, but backed off at the last minute. So this was not a spur of the moment. This was something that was carefully planned by this defendant.
As mitigating factors, the judge found that defendant had no prior convictions and had cooperated with law enforcement authorities. N.J.S.A. 2C:44-1b(7) and -1b(12). The judge concluded that "the aggravating and mitigating factors are in balance" and imposed the presumptive term for a second degree crime of seven years, pursuant to N.J.S.A. 2C:44-1f.
The findings of a sentencing judge on the aggravating and mitigating factors must be based on sufficient credible evidence in the record; considering an inappropriate aggravating factor is grounds for vacating the sentence. State v. Kromphold, 162 N.J. 345, 355, 744 A.2d 640 (2000). Appellate courts have "the authority to review findings of fact by the sentencing court in support of its findings of aggravating and mitigating circumstances." N.J.S.A. 2C:44-7.
We conclude that the findings the judge used to support his conclusion that there was a "risk that defendant will commit another offense[,]" N.J.S.A. 2C:44-1a(3), were not relevant to the crime of endangerment. Although the judge's description of defendant's prior plan of the crime and his "dry runs" was accurate, those facts related to the kidnapping, not the child endangerment offense. The record also discloses that the judge did not specifically comment on the need for deterrence, N.J.S.A. 2C:44-1a(9), with respect to the endangering conviction.
Defendant further argues that the sentencing judge erred in failing to consider mitigating factors, in addition to his lack of a prior record and cooperation with authorities under N.J.S.A. 2C:44-1b(7) and -1b(12). Defendant contends that his conduct neither caused nor threatened serious harm to A.C., N.J.S.A. 2C:44-1b(1); that his mental illness excused or justified his conduct, N.J.S.A. 2C:44-1b(2); that his conduct resulted from circumstances unlikely to recur, N.J.S.A. 2C:44-1b(4); that his character and attitude indicated that he was unlikely to commit another offense, N.J.S.A. 2C:44-1b(8); that he was likely to respond favorably to probationary treatment, N.J.S.A. 2C:44-1b(9); and that imprisonment would cause him excessive hardship, N.J.S.A. 2C:44-1b(11).
It is well-settled that a sentencing judge's consideration of mitigating factors is discretionary. State v. Soto, 340 N.J.Super. 47, 72, 773 A.2d 739 (App.Div.), certif. denied, 170 N.J. 209, 785 A.2d 438 (2001). "[T]he court shall consider the following aggravating circumstances", N.J.S.A. 2C:44-1(a) (emphasis added), but it "may properly consider the following mitigating circumstances." N.J.S.A. *881 2C:44-1b (emphasis added). Here, the evidence could support, but does not compel, the conclusion that any of the cited mitigating factors apply.
However, we are constrained to vacate the sentence imposed on the endangering conviction because the findings of the judge on the aggravating factors were supported by facts that related to the kidnapping crime, not the crime of endangering. We emphasize that we reach no qualitative conclusions concerning the identification of appropriate and relevant aggravating or mitigating factors. We remand only for the trial court's identification of those aggravating and mitigating factors that are supported by sufficient credible evidence in the record, for a balancing of those factors, and imposition of a sentence in accordance with applicable guidelines. See State v. Jabbour, 118 N.J. 1, 6, 570 A.2d 391 (1990); State v. Kruse, 105 N.J. 354, 363, 521 A.2d 836 (1987).

VII.
In summary, the conviction of first-degree kidnapping is reversed and the matter is remanded for entry of a guilty plea to second-degree kidnapping in accordance with the agreement entered into between the parties. The sentence on the endangering conviction is vacated and the matter is remanded for resentencing on that conviction, and for sentencing on the second-degree kidnapping conviction upon substitution and acceptance of the guilty plea to that conviction.
Reversed and remanded for further proceedings consistent with this opinion.
NOTES
[1] There is no contention in this appeal that the victim was released in an unsafe place.
[2] At or about that time defendant also filed a motion to suppress evidence pursuant to a search warrant. The denial of that motion is not a subject of this appeal.
[3] In the plea agreement, defendant specifically agreed that the sentence to be imposed on the second-degree endangering conviction would run consecutively to the sentence imposed on the kidnapping conviction.
[4] The charge given by the trial court in Casilla was the two-element model charge for N.J.S.A. 2C:13-1b. See Model Jury Charge (Criminal), Kidnapping (N.J.S.A. 2C:13-1b) (Revised Jun. 24 1991).